JOHN S. SCOTT, Administrator of the Estate of J. N. Mc-
CANN, Deceased, Appellant, v. JAMES CROUCH,
FLORINDA CROUCH and ZELNORA HOPPER, Respondents.

No. 1337.   (67 Pac. 1068.)

1. **Equity: Enforcement of Trust: Lost and Unrecorded Deed: Evidence: Fraud.**

In a suit by the administrator of a deceased locator of a mining claim to declare that the patentee thereof is a trustee for the estate of the deceased, on the ground of fraud in procuring the patent, by presenting false affidavits averring that the original locator had conveyed his interest therein, evidence considered, and *held* to authorize a finding that such locator had conveyed his interest in the claim, and that therefore there was no fraud on the patentee's part in procuring the patent.

2. **Same: Burden of Proof.**

A person alleging that a party holding the legal title, to property is a trustee thereof has the burden of proving the trust.

Scott, Admr., v. Crouch et al.

3.  **Same: Conveyance may be Shown by Parol.**
    Though a mining claim can only be conveyed by a deed in writing duly executed and delivered, the due execution and delivery of such a deed, which was not recorded, and which is lost, may be proven by parol testimony.

4.  **Same: Decree of Proof Required.**
    A party claiming title through a grantee in a lost and unrecorded deed will not be required, after the parties to the transaction are dead, or can not be found, and after the lapse of several years without the grantor, or any one for or through him, claiming any interest in the property and after primary evidence of the transaction is no longer obtainable to furnish the high degree of proof of the due execution and delivery of the lost deed that is generally required.

5.  **Same: Laches.**
    Where, in a suit by the administrator of a deceased locator of a mining claim to declare the patentee thereof a trustee for the estate of the deceased, on the ground that an alleged lost and unrecorded deed, conveying the locator's interest in the mine, was not executed, it appeared that the locator for over 15 years made no claim as owner thereof, and had knowledge of the claims of other persons who during such time worked the mine, the right of recovery was barred by the locator's laches.[1]

6.  **Same: Former Owner: Declaration against Interest.**
    The declaration of the locator of a mining claim that he had conveyed the property by deed, and had been paid therefor, is an admission against his interest, and admissible after his death.

(Decided March 8, 1902.)

Appeal from the Third District Court, Salt Lake County.— *Hon. W. C. Hall,* Judge.

Action brought by John S. Scott, as the administrator of the estate of James McCann, deceased, claiming a right to a one-tenth interest in the Zelnora mining claim, the legal title to which, by a patent from the United States, has been vested in Zelnora Hopper, and by her deeded to the defendants.

---

[1]Wood v. Fox, 8 Utah 397; 32 Pac. 48.

From a decree in favor of the defendants, the plaintiff appealed.

AFFIRMED.

*Messrs. Frick & Edwards* for appellant.

Under the issues in this case the title to the mining claim in question is claimed through a conveyance from the deceased McCann, and in no other way.   As to whether such a conveyance as required by law was ever executed by said McCann is the crucial question in this case and this question must be solved from an inspection of the evidence upon the trial in this case.   The court so found, but unless such finding is supported by legal evidence it can have no legal effect.

Let us not forget that in this case it is necessary to establish the fact that a lawful deed once existed; that, it was lost, and what the contents of this last deed were; in other words, the deed had to be re-established by secondary evidence.   In order to establish a deed or a conveyance from A to B, proof must be made that a deed once existed; that it is lost; that it was duly executed by A as required by the laws then in force, and that the same was delivered, and this must then be followed by proving the contents of such deed, and until this is done no deed or conveyance is proved.   Potts v. Colman, 5 So. Rep. 780-782; Handcock v. Kelly, 22 So. Rep. 281; Lempe v. Kennedy, 14 N. W. 45; Wakefield v. Day, 43 N. W. 72; Edwards v. Noyes, 65 N. Y. 126, 127; Davis v. Sigourney, 8 Metc. (Mass.) 489; Logan v. Gardner, 20 Atl. Rep. 625; Thomas v. Ribble, 24 S. E. Rep. 242; Calhoun v. Calhoun, 6 S. E. Rep. 913; Smith v. Smith, 31 S. E. Rep. 762; Connor v. Pushor, 29 Atl. Rep. 1083; Dey v. Philbrook, 26 Atl. Rep. 999; Carter v. Pitcher, 34 N. Y. 551; Elyton Land Co. v. Denny, 18 So. Rep. 561; Stockdale v. Young, 3 Strob. (S. C.) 501; Metcalf v. Van Benthuysen, 3 N. Y. 424, 426.

*Messrs. Brown & Henderson* for respondents.

This action was brought for the purpose of decreeing that the legal title, which is vested in the defendants, belongs to the plaintiff for a one-tenth of the Zelnora mining claim, and a decree requiring the defendants to convey to the plaintiff. That this right is claimed upon the theory that the legal title is vested already in the defendants, but that it was obtained by fraud, and the ground complained of is that the patentee, Mrs. Hopper, procured a false and fraudulent affidavit from Frank H. Dyer and from Thomas Pells and submitted them to the officers of the government to support her application for a patent. This is the entire claim and is the foundation of any equity they may have to the property in controversy.

Counsel for appellant have rested their entire case in this court upon the one single proposition that the defendants did not in their testimony make sufficient proof that the title to the property had vested in them; that is, that there was not sufficient proof to establish the fact that a deed had been made by McCann to Dickson, for the reason that the testimony did not establish sufficiently what the terms and conditions of the deed were sufficient to show that the title had passed. The cases cited by appellant were each and all cases where title never had passed to the defendant, or a party was seeking to prove the title, and it had to be shown for the purpose of establishing the fact that the legal title itself had passed. In this case the title has passed. The title is legally and properly vested in the defendants and the burden was upon the plaintiff to show, and to show clearly, that the defendants were not entitled to hold it. The very theory upon which the plaintiff based his cause of action, admits that the title is already vested in the defendants, and he seeks to have a decree to compel them to convey it to the plaintiff. The defendants were not seeking to obtain a title from the plaintiff

or seeking to establish title in themselves. It was admitted by the plaintiff that they already had it.

The rights of parties and of the government where a fraud had been practiced upon the government, as in obtaining a patent, have been well settled and well adjudicated by the courts. Maxwell Land Grant Case, 121 U. S. 325; Colorado Coal & I. Co. v. United States, 123 U. S. 307; Mery v. Brodt, 125 Cal. 332-5; Wiseman v. Eastman, 57 Pac. 398; Smelting Co. v. Kemp, 104 U. S. 640-1; Craig v. Leitensdorfer, 123 U. S. 212; Plummer v. Brown, 70 Cal. 546; See also note to Hartman v. Warren, 22 C. C. A. 28 to 36. Silver v. Ladd, 7 Wall 219; Johnson v. Towsley, 13 Wall 72.

In cases such as last cited the action is not to cancel the patent, for that would leave the title in the United States, but to have an action brought by a party showing that he is entitled to the same right that the United States would have, and to decree that the patentee holds in trust for him; the proof is required to be the same as though the United States had filed the bill; and in addition to that he must show that he himself is entitled to a patent; that is, that he has fulfilled all the conditions necessary to receive the patent, and but for the fact that the government has conveyed it to another person he would be entitled to receive it. Mery v. Brodt, 121 Cal. 332; Plummer v. Brown, 70 Cal. 546; Buckley v. Howe, 86 Cal. 60; Craige v. Leitensdorfer, 123 U. S. 212; Note to Hartman v. Warren, 22 C. C. A. 28 to 36; Bohall v. Dilla, 114 U. S. 50-51; Sparks v. Pierce, 115 U. S. 468.

In this class of cases the court, in hearing them, does not act as a court of review over the decision of the land office and can not review the testimony or set it aside for receiving incompetent testimony, or on the weight of the testimony given before the land office; but the case is heard upon the theory, either that the land office has committed a plain, patent error of law, upon all the testimony that was received by it; or upon the theory that the testimony upon which it

acted was false and fraudulent and thereby the officers of the government were deceived. Shepley v. Cowan, 91 U. S. 339-40; Smelting Co. v. Kemp, 104 U. S. 640; Baldwin v. Stark, 107 U. S. 465; Quimby v. Conlan, 104 U. S. 425-6; Wiseman v. Eastman, 57 Pac. 398-402; Parson v. Venzke, 61 N. W. 1036.

There is another reason why the point made by appellant can not avail them. The testimony that was given in relation to the deed from McCann was that he himself had stated that he had deeded it. It was an admission of the person who it was claimed had made the deed that he had made such a deed. When evidence is offered tending to establish a deed from one party to another, if the evidence is simply by some third person that they had seen a deed of the property there is reason for holding that there must be evidence of the genuineness of the signature and the contents of the paper so that the court may see that it was a conveyance. But in this case it is shown that Dyer and Dickson were in possession of the property and while they were in possession Mr. McCann stated that he had made a deed to Dickson and had received $50 for it. This is an admission that he had conveyed the property. Suppose it was true that some error in the language of the deed did not convey the property, yet he admitted that he had transferred it, that he had sold it, and it is sufficient to establish the fact that he had or in equity ought to have transferred the property and is admissible in evidence against him, his heirs and successors. Hodges v. Hodges, 2 Cushing (Mass.) 455; Kirby v. Kirby, 57 Md. 345.

Plaintiff can not recover in this case because of laches. In a case in equity it is not necessary to plead laches. If laches appear upon the whole case the court on its own motion will refuse the relief asked for. Sullivan v. Portland Ry. Co., 94 U. S. 806-811; Hagerman v. Bates, 38 Pac. Rep. 110; Board of Commissioners v. Ry. Co., 18 Fed. 209-210; Coon v. Seymour, 37 N. W. 243-244.

MINER, C. J.—The appellant, Scott, as administrator of the estate of J. N. McCann, deceased, filed his complaint against the defendants, and bases his claim for recovery upon the ground that the appellant's intestate during his lifetime was the owner of a one-tenth interest in the Zelnora mining claim, and that McCann died in 1886 seized of said interest therein, by virtue of having been one of the original locators thereof, and that he never parted with such interest. Respondents assert title to one-tenth interest therein, based upon the claim that McCann in 1879 conveyed by deed his interest in said mining claim to one S. R. Dickson, and that they succeeded to said interest from Frank H. Dyer through a United States marshal's deed to said Dyer, and by a quit-claim deed from him to Zelnora Hopper, and by her to the other respondents, James Crouch and Florinda Crouch. The record shows no deed of record from McCann to S. R. Dickson, except that in 1891 Zelnora Hopper applied for a patent to the Zelnora mining claim, and a patent was duly issued to her on June 23, 1892, by the United States government. The plaintiff alleges in his complaint that at the time of the application for said patent the affidavits of Frank H. Dyer and Thomas Pells were presented to the receiver, in part as the basis therefor, wherein the appellant claims that Dyer falsely testified that said McCann in 1879 sold and conveyed his one-tenth interest in said claim to S. R. Dickson and that he (Dyer) thereafter became the owner thereof by virtue of a marshal's deed under an order of sale duly made upon a judgment rendered in a proceeding wherein Dickson and others were defendants, and that Pells falsely testified that the statements contained in Dyer's affidavit were true; that the affidavits were falsely and fraudulently presented by said Zelnora Hopper to show that she was the owner of said Zelnora mining claim; and further alleges that she holds said title as trustee for plaintiff's estate, and not otherwise. After hearing the testimony, the court, among other things, found that Mc-

Cann was one of the owners of said mining claim, and owned a one-tenth interest up to 1879, when he executed and delivered a deed of all his interest to S. R. Dickson, who, with others, then entered into possession and worked the same, since which time McCann has had no interest therein; that in 1879 Thomas Pells, one of the locators of said claim, sold and conveyed to Dickson all his interest in said claim, and delivered a deed thereof; that Dickson failed to record said deed; that thereafter Dickson and others entered into possession of said claim, and performed the assessment work thereon until the claim was patented; that on the seventh day of February, 1881, Frank H. Dyer succeeded to all the interest of Dickson in said claim formerly owned by McCann, and other interests amounting to eight-tenths interest therein, through a deed executed by the United States marshal on a valid judgment, decree, and sale in a suit wherein Dyer was plaintiff and S. R. Dickson, J. B. Ritchley, Zelnora Hopper, James Crouch, and P. K. Sheffield, were defendants, and that Dyer at once took possession thereof; that in August, 1897, Dyer and wife duly conveyed said claim to Zelnora Hopper; that in 1880 James Crouch and James B. Ritchley, the owners of two-tenths of said mining claim, duly conveyed said interest to Zelnora Hopper, and that by said conveyance said Zelnora Hopper became the legal and equitable owner of all of said claim; that in 1891 said Zelnora Hopper made application to the proper authorities of the United States for a patent to said mining claim, and, as part of the abstract record, she procured and filed the affidavits of Frank Dyer and Thomas Pells, testifying that in the year 1879 the said J. N. McCann and Thomas Pells had each, to their knowledge, sold to the said S. R. Dickson their, and each of their, interests in said claim, and executed and delivered to said Dickson a deed of conveyance thereof; that all the development work thereon was done as required by law; that on the twenty-third day of June, 1892, a patent was granted to Zelnora Hopper

to all of said claim; that said affidavits were true, and were obtained without fraud; that from 1879 up to McCann's death, in 1886, he made no claim to any part of said claim, although he well knew that Dickson was in possession thereof with other owners, and was developing and performing assessment work thereon; that in 1892 Zelnora Hopper duly conveyed to James Crouch an undivided one-half interest in said claim, and in February, 1894, duly conveyed to Florinda Crouch the remaining undivided one-half of said claim, who are now the legal and equitable owners of the same; and that plaintiff has no rights therein. A decree was entered accordingly. The plaintiff appeals, and claims that the evidence does not establish the fact and conclusion that McCann ever conveyed, or delivered a deed to Dickson of his one-tenth interest in said claim. It is conceded that, if such deed was made, then the decree should be affirmed; if not, it should be reversed.

The evident theory of the appellant is that the legal title was all vested in the defendants, and that it was obtained by fraud, through the act of Hopper in fraudulently obtaining the affidavits of Dyer and Pells used on the proceeding to obtain a patent from the United States. The affidavit of Dyer, used before the commissioner of the land office, and shown in evidence by the plaintiff, so far as material, reads as follows: "It is personally known by me that in the year 1879 J. N. McCann and Thomas Pells, who were two of the original locators of said Zelnora lode, conveyed by deed their undivided two-tenths interest, which they then owned in said lode, to the said S. R. Dickson, and said interest was then vested in him at the time of said judgment and decree, as shown by the findings and report of J. L. Rawlins, the commissioner appointed by the court to take evidence in said case, as well as by the judgment itself, a certified copy of which, with the order of sale, is filed herewith; that the said S. R. Dickson has evi-

24 Utah—25

dently simply neglected to cause his said deed to be recorded; that he is believed now to be dead, or, if alive, he can not be found, his whereabouts being unknown since the year 1880; that, in further support of my statement as to said deed to Mr. Dickson, I have to state that I acted for him in making the purchase of said interest of two-tenths in said lode." The affidavit of Thomas Pells, used on said hearing, is as follows: "Also personally appeared Thomas Pells, of Bingham, Salt Lake county, Utah, who, being duly sworn, deposes and says that he has heard read the foregoing affidavit of Frank H. Dyer, and personally knows that the statements made therein as to the conveyance of said two-tenths interest of himself and J. N. McCann by deed to said S. R. Dickson are true, and, upon his best information and belief, all the other statements therein contained are also true, and that he has no interest now in said Zelnora lode." Mr. Pells, the last-named affiant, was present in court and gave his testimony at the hearing of this case. He testified, in substance, that he knew the claim in question, and the parties; that in 1879 he sold and conveyed his interest in the claim to Dickson, and executed and delivered to him a deed of the same; that at this time he knew McCann, and had talked with him about his interest in Zelnora claim. He says: "He (McCann) told me that he had sold his interest to Mr. Dickson, through Mr. Dyer, and had made a deed. I think it was just after I had sold. He told me he got $50 for it. I got $50 for mine. After the sale, or about the time I sold that spring, I saw Mr. Dickson and Mr. Dyer at different times on that property. They were prospecting and opening up the mine; that is, running a tunnel, particularly. They were doing assessment work; had a tent up there on the property, and were living there. Mr. Dyer was stoping out ore and running a tunnel. He was working for Mr. Dickson. He had charge of the work for him and the other owners. After that I remember of hearing about a suit being commenced by Dyer to establish a lien

on that property for the work. I heard of it afterwards, about the time it was brought; and Mr. McCann was living there in the community at that time. I was acquainted with the property, and saw it occasionally after that for some years. I know something about Mr. McCann working the property called the 'Rob Roy.' They are pretty well connected together. Their end lines come about together. I don't think they quite adjoin." Mr. Taylor testified, in substance, that in 1885 he visited McCann before his death, while on the Rob Roy claim, which was situated near the Zelnora, for the purpose of incorporating some claims; that he could then see the Zelnora claim, and asked McCann who owned it; that McCann replied that it was the Hopper claim, and that it belonged to Hopper and Dyer; that McCann did not claim any interest in the Zelnora claim; that he pointed out the lines between the Zelnora claim and his claim. It also appears that, after the time Dickson purchased the Zelnora claim from McCann, he went to work upon it, and did development work thereon, and that McCann and Pells subsequent to this time did no work upon it, but did work upon other claims in that vicinity for several years thereafter, and ran a tunnel 500 or 600 feet in connection with E. Rauch, a co-owner in other claims near the Zelnora. During all this period before McCann's death he made no claim to any interest in the Zelnora; neither did Mr. Rauch, who, after McCann's death, was appointed his administrator. The other parties owning the claim performed the assessment work upon it for several years, and no showing is made that McCann and Pells contributed anything towards such expense, or raised any objection to such occupancy or working by Dickson. These facts certainly raise the inference that the affidavits of Dickson and Pells are true.

So far as appears, the allegations of fraud upon which the complaint is predicated, and which should be shown by the plaintiff, have not been established by the testimony in

the record. As stated, the legal title to the claim stood in the defendants. Under such circumstances, the burden was upon the plaintiff to show that they were not entitled to retain it, but held it in trust for the plaintiff. While it is true that a conveyance of a mining claim or other real estate can not be made, except by deed in writing, executed and delivered, yet, when the deed is lost and can not be found, such conveyance may be shown by such facts and circumstances as will clearly justify the conclusion that in fact it was so executed and delivered. Taking the testimony given with the decree, and the action of the land commissioner, coupled with the fact that neither McCann nor his administrator, since 1879, up to the time of the commencement of this suit, has made any claim or performed any labor upon the Zelnora claim, compels the conclusion that McCann conveyed to Dickson his interest therein, as testified to by Pells, Dyer, and Taylor, and that such interest subsequently vested in the patentee. This conclusion is strengthened by the fact that McCann was working an adjoining claim, and saw Dyer and Dickson performing assessment work upon the Zelnora, and during this time stated that he had made a deed of his interest in the claim to Dickson. McCann never performed any assessment work upon the claim. From June, 1879, to the time of the patent, other owners performed this work. Dyer died in 1892. McCann died before that time. Dickson is dead, or can not be found. Two of the interested parties in the transaction, who knew the facts, are now deceased. The other is dead, or at least can not be accounted for. The situation of the parties has materially changed since Dickson purchased. Primary evidence of the transaction is no longer obtainable. The deed is lost or destroyed. Under such circumstances, and after such unexplained and inexcusable delay in bringing suit, the defendants are not called upon to furnish that high degree of proof to establish

the execution and delivery of the deed that might under other circumstances be required.

It also appears that in 1880 there was litigation over the property in which title had been held by McCann, by which Dyer claimed a lien for assessment work. The proceedings were public. J. L. Rawlins was referee in the case. It was a matter of public notoriety that Dickson then claimed an interest in the mine, and it was found that he did own it, and that Dyer had a lien upon it, for which it was sold. Nearly six years passed before McCann's death, and yet no claim was ever set up by him to the property, although he knew that Dyer was at work upon it. Under ordinary circumstances, this unexplained delay and laches on the part of McCann, if not that of his administrator, would be considered a sufficient reason for refusing the relief prayed for in this case. It is said in Mackall v. Casilear, 137 U. S. 566, 11 Sup. Ct. 181, 34 L. Ed. 776, that: "The doctrine of laches is based upon grounds of public policy, which requires, for the peace of society, the discouragement of stale demands. And where the difficulty of doing entire justice, by reason of the death of the principal witness or witnesses, or from the original transactions having become obscured by time, is attributable to gross negligence or deliberate delay, a court of equity will not aid a party whose application is thus destitute of conscience, good faith, and reasonable diligence. Jenkins v. Pye, 12 Pet. 241, 9 L. Ed. 1070; McKnight v. Taylor, 1 How. 161, 168, 11 L. Ed. 86; Godden v. Kimmell, 99 U. S. 201, 25 L. Ed. 431; Landsdale v. Smith, 106 U. S. 391, 1 Sup. Ct. 350, 27 L. Ed. 219; Le Gendre v. Byrnes, 44 N. J. Eq. 372, 14 Atl. 621; Wilkinson v. Sherman, 45 N. J. Eq. 413, 18 Atl. 228." This doctrine is also sustained by the following authorities: Board of Com'rs v. Chicago, R. I. & P. Ry. Co. (C. C.), 18 Fed. 209; Hagerman v. Bates (Colo. App.), 38 Pac. 1100; Sullivan v. Railroad Co., 94 U. S. 806, 24 L. Ed. 324; Wood v. Fox, 8 Utah 397, 32 Pac. 48.

The declaration of McCann, deceased, that he had deeded the property to Dickson, and had received pay for the same, was a declaration against his own interest, and was made at a time when he knew that Dyer and Dickson were in possession of the claim, and knew that they had been in possession for years, doing work upon it. It was an admission of the person who made the deed. Had the declaration been made by a third party, to the effect that he had seen the deed, some evidence might be required showing the instrument to be genuine, and also showing its contents; but, when a party admits such a fact against his own interest, testimony may be received of the admission against himself. This evidence is received on the ground of the extreme improbability of its falsity, and is entitled to consideration. In 1 Greenl. Ev., section 148, it is said: "The regard which men usually pay to their own interest is deemed a sufficient security both that the declarations were not made under any mistake of fact or want of information on the part of the declarant, if he had the requisite means of knowledge, and that the matter declared is true. The apprehension of fraud in the statement is rendered still more improbable from the circumstance that it is not receivable in evidence until after the death of the declarant, and that it is always competent for the party against whom such declarations are adduced to point out any sinister motive for making them. It is true that the ordinary and highest tests of the fidelity, accuracy, and completeness of judicial evidence are here wanting, but their place is in some measure supplied by the circumstances of the declarant; and the inconveniences resulting from the exclusion of evidence having such guaranties for its accuracy in fact and for its freedom from fraud are deemed much greater, in general, than any which probably would be experienced from its admission." Tilton v. Emery, 17 N. H. 536; Wynn v. Cory, 48 Mo. 346; Kerby v. Kerby, 57 Md. 345; Hodges v. Hodges, 2 Cush. 455.

We are satisfied that there is testimony in the case suffi-
cient to sustain the findings and decree. The judgment of
the district court is affirmed, with costs.

BASKIN and BARTCH, JJ., concur.