WILSON, Appellant, v. DAVIS et al., Respondents.

(No. 7,920.)

(Submitted November 28, 1940. Decided March 26, 1940.)

[103 Pac. (2d) 149.]

358

*Mr. Sam D. Goza, Jr., Mr. E. C. Kurtz, Mr. J. D. Taylor, Mr. Floyd C. Fluent, Mr. S. C. Ford* and *Mr. Jay Kurtz,* for Appellant, submitted an original and a reply brief; *Mr. E. C. Kurtz* and *Mr. Ford* argued the cause orally.

*Mr. R. F. Gaines* and *Mr. J. A. Poore,* for Respondents, submitted a brief; *Mr. Gaines* argued the cause orally.

HONORABLE GUY C. DERRY, District Judge, sitting in place of MR. JUSTICE ANGSTMAN, disqualified, delivered the opinion of the court.

Plaintiff has appealed from the judgment of the district court directing a verdict against her. The action is based upon her alleged loss of property by reason of the alleged conspiracy and wrongful acts and conduct of the defendants.

The complaint alleges that certain real estate located in the city of Butte, and certain unnamed stocks and bonds, were transferred to her and her husband by a warranty deed and by assignments and transfers by one Elizabeth D. Baxter during her lifetime, which instruments were alleged to have been delivered to the defendant Poore for delivery to her and her husband, or to her in the event of the death of her husband. Her further contentions can best be made clear by reference to the complaint. Paragraph 10 contains this allegation: "That

thereafter and on said date [previously shown to be May 5, 1930] the said defendant, Poore did prepare a deed conveying said real property to the said Frank K. Wilson and plaintiff, and did prepare necessary assignments or transfers setting over and conveying unto said Frank K. Wilson and plaintiff, stocks, bonds and other securities of the value of One Hundred Fifty Thousand Dollars ($150,000) and did transfer, convey and set over unto plaintiff, stocks and bonds and other securities of the value of Fifty Thousand Dollars ($50,000.00), which said deed was thereupon duly executed by the said Elizabeth D. Baxter and delivered to the said defendant, Poore, and the said assignments and transfers of the said stocks, bonds, and other securities, together with said deed were delivered to the said defendant, Poore, to be delivered by said Poore to the said Frank K. Wilson and plaintiff, or in the event of the death of said Frank K. Wilson to deliver the same to plaintiff, when the estate of the said James Hamilton was closed by appropriate judicial proceedings, or upon the death of the said Elizabeth D. Baxter.''

It is further alleged that Frank K. Wilson died on the 1st day of September, 1932, and the plaintiff became and was entitled to receive from defendant Poore the deed in question, together with the stocks and bonds alleged to have been assigned and transferred. In another paragraph it is alleged that Poore has wilfully and wrongfully failed, neglected and refused, and does now so fail, neglect and refuse to make delivery of said deed and said assignment and transfers to plaintiff, and that the defendant Davis, well knowing that the assignments and transfers of said stocks, bonds and other securities had been made, refused and neglected to make delivery of said stocks and bonds to the said Frank K. Wilson and this plaintiff, and plaintiff alleges on information and belief, that said deed, assignments and transfers aforesaid, were, by said Poore, destroyed. It is further alleged that the defendants, by their representations that the property would be delivered to her, lulled her into a sense of security, and that she did not know until she was advised by other persons, on or about the 5th

day of July, 1937, that the hotel and other property in the estate of Elizabeth D. Baxter had been distributed nearly two years prior thereto. As a result, she alleges that she has been deprived of her rights and interest in the property in question, of the value of $300,000, for which sum she demands damages, together with a like sum claimed as exemplary damages. This action was filed September 25, 1937. Mrs. Baxter died February 23, 1931.

The question to be here determined is whether any competent evidence was given at the trial which is sufficient in law to go to the jury for their determination as to whether the allegations of the complaint have been proved, or from which such proof may be inferred, having in mind the well-established rule that upon a motion for directed verdict the evidence must be viewed from the standpoint most favorable to the plaintiff and that every fact must be deemed proved which the evidence tends to prove. (*Staff* v. *Montana Petroleum Co.*, 88 Mont. 145, 291 Pac. 1042.)

To prove the execution and delivery of the deed and of the assignment of the stocks and bonds in question, plaintiff testified to statements alleged to have been made to her by Mrs. Baxter during her lifetime. She also produced witnesses who testified to statements alleged to have been made by Mrs. Baxter, to the effect that she intended to "provide for" the Wilsons, or had "left" them this hotel and other property. None of that testimony by other witnesses tends to corroborate Mrs. Wilson's testimony about deeds and assignments, as it is at least equally susceptible to indicate the execution of a will. All of these declarations, in so far as they relate to the gift of property to the plaintiff, were allegedly made subsequent to the alleged execution of the deed in question and the alleged assignment of the stocks and bonds. The deed and assignment were not offered in evidence, and no evidence of their contents was given. The proof supporting the allegation of a gift consists solely of her statements as to what she had done in regard to the property theretofore. The only testimony tending to prove execution and delivery of the deed and transfer of the stocks

and bonds, was that given by the plaintiff. Nothing of proba-
tive value was added by any other witness. The following
quotations from her testimony, received over objection that it
was hearsay, give her evidence to prove there had been an
actual transfer and delivery:

"I went into her room and she said, 'Mrs. Wilson, I have
everything taken care of now and Mr. Poore has the papers.
I had given you and Mr. Wilson the Butte Hotel property and
$150,000.00.' "

"I went into her room and she said, 'Mrs. Wilson, I have
everything taken care of, I have given you and Mr. Wilson
the Butte Hotel property jointly in a deed of escrow and stocks
and bonds amounting to $150,000, and you $50,000 the same
as I have Mrs. Stahl,' and she says, 'I am very tired because,'
she says, 'there was so much after I have given those and I
made a will after that.' She told me she had given the deed
which she had executed to the hotel property and stocks, and
they were in Mr. Poore's possession."

Questioned as to why Mrs. Baxter did not deliver the deed
and stock certificates and bonds to her and Mr. Wilson at that
time, she answered as follows: "She said she could not give
them to us at the present time as the estate would have to
be probated. She said that the deed and stocks and bonds
would be delivered to me as soon as the estate was distributed."

Are such declarations, as here shown, competent evidence to
 establish the actual transfer, and were they properly
received in evidence? It is wholly unnecessary to consider
whether a conspiracy had been established until it is first de-
termined whether any transfer was made. It is a general and
well-established principle of law that, where persons are sued
for a civil wrong, it is the civil wrong resulting in damage, and
not the conspiracy which constitutes the cause of action. A
conspiracy is not the subject of a civil action unless it results
in damage to the party complaining. (5 Cal. Jur. 528; *Mining
Securities Co.* v. *Wall,* 99 Mont. 596, 45 Pac. (2d) 302–304.)

The action was brought by the plaintiff on the premise that
 a written transfer of the real and personal property in

question had been made by Mrs. Baxter to the plaintiff. Indeed, this would seem to be the only possible basis for her action. As to the realty, under section 6859, Revised Codes of 1935, the transfer could only be effected by operation of law, or by an instrument in writing subscribed by Mrs. Baxter, or by her agent authorized in writing. And it is difficult to see how an effective gift of stocks and bonds held in an estate could be made verbally by an heir at law.

As shown by her complaint, plaintiff's action was based upon ■■ the theory that the transfers were actually made and had been lost or destroyed, or were in the possession of defendant Poore, who refused to deliver them. Only the contents of a document can prove that it constitutes a transfer, for a statute requiring a transfer to be in writing is nullified for all practical purposes if the only proof necessary is the parol statement of someone's conclusion that a written conveyance was made. And under our Code sections 10516, 10585 and 10586, there can be no evidence of the contents of a writing other than the writing itself, unless the original has been lost or destroyed, in which case the proof of loss or destruction must first be made, or, as further applicable to this case, unless the original is in the possession of the party against whom the evidence is offered and he fails to produce it after reasonable notice. Here there was no proof of the loss or destruction of the deed or transfers of stocks and bonds, so as to permit other evidence of their contents. And obviously, under section 10516, no demand upon Mr. Poore to produce them at the trial in May, 1938, can be effectual as a foundation for such evidence until it has first been shown by evidence that "the original is in the possession" of Mr. Poore. The only evidence even tending to prove that the originals had ever been in his possession was plaintiff's own testimony of Mrs. Baxter's declarations in May, 1930, that "Mr. Poore has the papers" and that "they were in Mr. Poore's possession." Assuming that such declarations are any evidence of Mr. Poore's possession eight years later, they are clearly hearsay, and if they are admissible at all it is only on the theory that they are admissions against interest. If

they were admissions against interest and were therefore admissible for the purpose of showing that transfer had been made by Mrs. Baxter, they would clearly not be admissible for the purpose of showing that Mr. Poore had possession of the documents; and since there is no proof of that fact, there is no basis for parol evidence of the contents of the writings, either by Mrs. Baxter's hearsay declarations or otherwise. In other words, her supposed declarations against interest, which are offered as some proof of the execution and of the contents of written documents and are therefore not admissible until it is shown that the party having possession of the documents has failed to produce them, cannot be introduced in the first instance to prove that they have been in the possession of the one from whom they were demanded, for as to such purpose they are pure hearsay.

Under plaintiff's theory of the case it was necessary for her to establish the transfers, and since the real estate transfer must be in writing, and she alleged that all the transfers were in writing, it was necessary for her to prove the contents of the transfers after first proving the loss or destruction of the same, or the failure on the part of the one in possession to produce them. The statute requiring such real estate transfer to be in writing is clearly designed to avoid the assertion of claims which, from their nature, should be evidenced by an instrument in writing, signed by the party against whom such claim of title is asserted, or by his duly authorized agent. To require anything less would be to encourage evil practices which the statute of frauds was intended to prevent. This court, in the case of *St. Martin State Bank* v. *Steffes,* 88 Mont. 85, 88, 290 Pac. 259, has said that the evidence of the former existence, execution, delivery, loss and contents of a lost instrument should be clear and convincing. In the instant case there is a total failure of proof of such facts. Plaintiff finds herself in the position of a litigant who has made a claim which she has been unable to support by competent evidence.

In order to show that she has been damaged, the burden was upon plaintiff to establish the allegations of her com-

plaint, i. e., the actual execution of transfers of property by written instrument, and their delivery to Poore for plaintiff. It is, of course, universally held that constructive delivery of instruments can be made by giving them to a third person with instructions to turn them over to the transferee on the transferer's death or on some other happening; but it is as universally held that there is a valid delivery only if the deposit is irrevocable and the documents thereby placed entirely out of the transferer's power. (*Springhorn* v. *Springer,* 75 Mont. 294, 243 Pac. 803.) Mrs. Baxter's alleged declarations that "Mr. Poore has the papers," and that "they were in Mr. Poore's possession," are entirely insufficient to show a delivery by which the deed and assignments were placed out of her power. Thus her declarations, if admissible, were insufficient to show the execution and delivery of the documents.

But the evidence is insufficient for still another reason. Neither Mrs. Baxter's declarations nor the other evidence furnishes any proof of the actual contents of the alleged documents, but expresses only her conclusion as to their effect. Not only is there an utter lack of evidence of the contents of any of the documents, but the personal property allegedly transferred is not even identified. There is no possible description or identification of the particular stock certificates or bonds allegedly transferred, or even of the numbers of shares or certificates of stock or of the numbers, denominations or face value of bonds, nor even any indication of their value except Mrs. Baxter's alleged estimate of $200,000 as their value on May 5, 1930, eight and one-half months before Mrs. Baxter's death on February 23, 1931, and three years and five months before the distribution of the Hamilton Estate on October 17, 1933. According to the complaint, the documents were supposed to have been delivered by Poore "when the Estate of the said James Hamilton was closed * * * or upon the death of the said Elizabeth D. Baxter." It would normally be considered from that allegation that they might become deliverable upon the happening of either contingency; but the reason given by Mrs. Wilson for the delay was that the Hamilton Estate first

had to be closed, so that they did not in any event become deliverable until October 17, 1933. In the light of the disastrous and unequal drop in the value of stocks and bonds between May 5, 1930, and October 17, 1933, how could such evidence possibly furnish a basis for the computation of damages for the alleged loss of undescribed property worth $200,000 on the first date, but not deliverable until the second? This instance clearly demonstrates the reason for the requirement that the contents of the transfers be shown. Certainly as to at least two-thirds of the subject of the action not even the property allegedly transferred is identified, and as to the remainder, the real estate, only its identity is stated, which is manifestly insufficient to prove the contents of any of the documents.

It should here be noted that in any event no possible cause of action can be considered made out with reference to the personal property claimed, since the statute, section 10531, subdivision 4, makes admissible declarations of a deceased person only "against his interest in respect to his *real property.*"

In a well-reasoned case in which the same principle was involved, this court, after reviewing applicable statutes, said this:

"It is apparent from these provisions that, in order to establish the former existence of this instrument in writing, appellants were compelled to prove its execution and contents. The rights of the parties in this controversy rested upon this written instrument, and could only be settled by the application of its terms to the questions in controversy. Its terms could not be so applied until its contents were established. The word 'contents,' used in this statute, evidently includes all the substantial parts of the lost instrument, and therefore proof of such contents requires a practical reproduction of the instrument in all of its substantial parts.

"The law is well settled that proof of the negotiations and conversations and acts of the parties before, at the time of, and after the execution of a written instrument are not competent to prove its contents, where the instrument is lost. [Cases cited.] The greater part of the record is composed of this class of testimony, and under the above authorities cannot

be considered." (*Capell* v. *Fagan*, 30 Mont. 507, 512, 77 Pac. 55, 56, 2 Ann. Cas. 37.)

The rule announced in the *Capell Case* has not been departed from by this court, although in a later case (*Nelson* v. *Gough*, 61 Mont. 301, 202 Pac. 196), the court held that it was a sufficient showing of the contents of a document if an intelligent witness has read the document and can state substantially its contents and import with reasonable accuracy. Applying these rules, the plaintiff has made no showing whatever of the contents of the written transfers for loss of which she seeks to recover. No witness was produced who claimed to have seen these transfers or have any knowledge of their contents, and plaintiff makes no claim of having seen them. She rests her case on the fact that Mrs. Baxter told her that such transfers had been made and that Mr. Poore had possession of them. Plaintiff testified that she was told by Mr. Poore on one occasion when she asked about the property Mrs. Baxter had given her, that she could do anything she wished with the Butte Hotel property, but such a statement, if made, cannot constitute any evidence of the execution, delivery or contents of a written transfer.

But even if Mrs. Baxter's alleged hearsay declarations were relevant as tending to establish plaintiff's case, they would be inadmissible. The evidence, consisting as it does, of declarations of a person since deceased, is patently hearsay, and unless it comes within one of the recognized exceptions, must be excluded.

Section 10506, Revised Codes, reads as follows: "A witness can testify to those facts only which he knows of his own knowledge; that is, which are derived from his own perceptions, except in those few express cases in which his opinions or inferences, or the declarations of others, are admissible." These exceptions to the hearsay rule may be grouped as follows:

1. Declarations of predecessor in title.
2. Declarations of decedent against his pecuniary interest.
3. *Res gestae.*

The exceptions are embodied in our Code in sections 10510, 10511, 10514 and 10531, subsection 4. Under the first section, the declarations of Mrs. Baxter could not be admissible, because the section only applies to a declaration made by a person *while holding title to real estate,* and such evidence would be binding only *against the grantee,* which in this case would be the plaintiff. The evidence, assuming it to be competent for that purpose, shows the declarant had parted with title at the time the statement was made; so it could not have application. (*Osnes Livestock Co.* v. *Warren,* 103 Mont. 284, 62 Pac. (2d) 206, and cases cited therein.)

Section 10511, covering the doctrine of *res gestae,* can have no application to the facts here. The statements made, and each of them, which tend to prove the transfer of property, are simply narratives of past transactions. The deed had been executed and the stocks assigned, and all placed with Mr. Poore for delivery to the plaintiff, under plaintiff's theory of the case, at the time the declarations are alleged to have been made. Such declarations, from all that appears, are not connected with the execution or delivery of the instruments conveying title, and form no part of the same. They do not constitute the transaction, do not serve to illustrate its character, and they were not contemporaneous with it. They have no connection with the actual transfer. The transfer, if made, is just as valid and enforceable without the declarations as with them. There is no showing that they were made while the speaker was laboring under excitement and before she had time to reflect or otherwise come within the rule enunciated by this court. (*Callahan* v. *Chicago, B. & Q. Ry. Co.,* 47 Mont. 401, 133 Pac. 687, 47 L. R. A. (n. s.) 587; *State* v. *Broadwater,* 75 Mont. 350, 243 Pac. 587; *Sullivan* v. *Metropolitan Life Ins. Co.,* 96 Mont. 254, 29 Pac. (2d) 1045.) No case has been called to our attention which permits the mere narrative of a past transaction, closed and completed, with no showing of special circumstances connected with such statement, or any direct connection with the transaction, to be competent evidence for any purpose except as it may be used against the person making the statement.

In Nichols on Applied Evidence, we find this definition of *"Res gestae*: *"Res gestae* consists in a spontaneous statement of a present condition or fact accompanying an act to such an extent as to actually become a part of the transaction itself. *Res gestae* are events speaking for themselves through the instinctive words and acts of participants, and not the words and acts of participants *when narrating the events.*" (1 Nichols on Applied Evidence, 384.)

From their very nature, the declarations relied on here could be nothing more than a narrative of a past transaction, which in nowise elucidates or explains the principal transaction. Plaintiff in her reply brief gives a quotation from 10 Ruling Case Law, 978. Included in the general statement of the rule by the editor is found this statement: "A declaration, however, which is merely a narrative of a past occurrence, though made ever so soon after the occurrence, is not part of the *res gestae* and cannot be received in evidence. * * * Declarations which are the result of an after-thought on the part of the declarant, made concerning a past event, are only hearsay and not competent evidence to prove the facts of such event."

To make section 10514 applicable, it would be necessary to show that the declaration was against the pecuniary interest of Mrs. Baxter, and, if so, it would be admissible, *to that extent, against her successor in interest,* who would be the plaintiff, if her theory of the case is correct. Clearly, this section does not apply.

Under section 10531, subsection 4, the act or declaration of a deceased person, done or *made against his interest in respect to his real property,* is made admissible. Here, if we accept plaintiff's interpretation of the declarations as showing execution and constructive delivery of the deed to Mr. Poore for the Wilsons, Mrs. Baxter had no real property at the time the declaration was made, because the title had passed by her deed. (Sec. 6845, Rev. Codes; *Plymale* v. *Keene,* 76 Mont. 403, 410, 247 Pac. 554.) It could not be against interest because by virtue of the supposed conveyance referred to she had no interest left in the same, and the declaration could not be in respect to *her*

*real property* because once the title passed from her she no longer had any interest in the property which is the subject of the declaration. (*Taylor* v. *Bunnell,* 77 Cal. App. 525, 247 Pac. 240.) It must be kept in mind that plaintiff here seeks to have the declaration of Mrs. Baxter held to be against the three defendants, who not only have no interest in the property but claim none. Plaintiff never attempted to claim the property from the estate, or before distribution of the estate, although she consulted several lawyers in reference to her rights, one as early as 1931, when the estate was being probated. Wigmore in his work on Evidence (3 Wigmore on Evidence, 2d ed., sec. 1459 (3), states that in order to make the declarations admissible "there must have been an interest at the time to say the contrary"; and if she had no further title in the property when she made the statement, she had then no more "interest to say the contrary" than if she had never owned it.

In 1 Jones on Evidence, fourth edition, it is stated (secs. 238 and 241), that declarations made after the declarant ceased to have any interest in the matter are not admissions against interest, but mere hearsay. The rule has been expressed in Montana in the case of *Dick* v. *King,* 80 Mont. 40, 257 Pac. 1022, 1024, as follows: "The general rule is that declarations of a former owner of property made subsequent to his parting with his interest in the property are inadmissible, but this rule is subject to an exception in the case of conveyances shown to have been made with the purpose of defrauding the vendor's creditors."

The principle is stated in 3 Wigmore on Evidence, second edition, section 1459 (3), as follows: "In statements offered under the present exception to the hearsay rule, the declarant must be deceased. Moreover, there must have been an interest at the time to say the contrary, but the statements may be used in any controversy, without regard to the parties concerned."

The statement includes three elements: (1) The declarant must be dead (which is true in this case); (2) there must have been an interest *at the time* to say the contrary (which is not

true in this case if the declaration is true) ; (3) the declarations are admissible in any controversy and against any party, whether a successor in interest or not.

Whether the text-writer's unsupported third conclusion, that the statements may be used in any controversy without regard to the parties concerned, is true in this jurisdiction, if true elsewhere, has not yet been decided by our court. In *Laundreville* v. *Mero,* 86 Mont. 43, 281 Pac. 749, 69 A. L. R. 416, it was held good as against heirs and therefore successors in interest of the declarant. On the other hand, the rule, as summarized in 1 Jones on Evidence, fourth edition, sections 241, 245, and supported by citations, is only that "the declarations of the grantor against his title, while in possession of the premises, are admissible, not only against him, but against those who claim under him." Our search of the authorities convinces us that the rule properly goes no further than as stated by the last textwriter.

If there were any question as to the rule in Montana it would be concluded by Code sections 10509 to 10514, inclusive, which are *in pari materia* with section 10531 and therefore limit its application. Section 10509 provides: "The rights of a party cannot be prejudiced by the declaration, act, or omission of another, except by virtue of a particular relation between them; therefore, proceedings against one cannot affect another." Sections 10510 to 10514 then proceed to define the "particular relations" between the declarant and the party which make the declarations admissible. As noted above, sections 10510 and 10514, the only two of the sections which could possibly apply here, specify that the "particular relation" necessary is that the party against whom the declarations are offered must be the successor in interest of the declarant. Thus the declarations of Mrs. Baxter were inadmissible here under our statutory provisions, both because they were not against her interest when made and because the defendants were not Mrs. Baxter's successors in interest.

In the instant case, before plaintiff could make out a case for the jury, it was necessary for her to show there was an actual

transfer of the property to her. Otherwise there was no damage. As above stated, there is no competent evidence in the record from which a transfer can be shown. The objection to the testimony on this point was well taken and the trial court evidently disregarded such evidence when it ruled on the motion for a directed verdict. In any event it was incompetent for any purpose, and it would have been an abuse of a sound legal discretion to admit or consider it.

It is unnecessary to discuss the other matters presented for our consideration, in view of our holding above.

The judgment of the district court is affirmed.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES MORRIS and ARNOLD concur.

MR. JUSTICE ERICKSON: I dissent. The majority has found that the statements of Mrs. Baxter are not declarations against interest and so they do not come within the exceptions to the hearsay rule contained in section 10531, Revised Codes. I believe they do come within subdivision 4 of that section, which provides that evidence may be given upon a trial of the following facts: "The act or declaration of a deceased person done or made against his interest in respect to his real property."

The majority says that the statement of Mrs. Baxter is not admissible since she had parted with title to the property at the time the statement was supposed to have been made; this upon the theory of the plaintiff that a transfer of the property had been made and that Mrs. Baxter had conveyed the property to the plaintiff. The defendants deny that any transfer had been made and it appears that the property in question was distributed as Mrs. Baxter's after her death. Further it appears that at the time Mrs. Baxter made the statement she was in possession of the real property as landlord.

I agree with the majority when it says that when a deceased declarant has parted with all title to the property at the time the declaration is made, the declaration is not against interest within the statute, but when the very question in dispute is as

to whether decedent has parted with title, then the statement is admissible. This court has so held in *Laundreville* v. *Mero*, 86 Mont. 43, 281 Pac. 749, 752, 69 A. L. R. 416. There the situation on this point was exactly the same as here. Defendant's theory, as here, was that the declarant was the owner of the property in question; the plaintiff's, that the declarant had deeded it to him. The court said: "Contention is also made that the evidence given by Frank Conley to the effect that decedent, after the making of the deeds, told him that he had deeded all his land away, and that the 40 acres in question belonged to Laundreville, was inadmissible as hearsay. This evidence was admissible by reason of subdivision 4, section 10531, Revised Codes 1921, which makes admissible 'the act or declaration of a deceased person done or made against his interest in respect to his real property.' * * * *Under defendants' theory of the case*, the decedent, when he made the statement, was and at all times since until his death had been the owner of this 40 acre tract. The statement was admissible as some evidence tending to show the mistake here asserted and to show the real intent of the grantor. (*McCabe* v. *O'Conner*, supra [42 S. D. 506, 176 N. W. 43].)"

In overruling the decision in the *Laundreville Case*, the majority relies on *Osnes Livestock Co.* v. *Warren*, 103 Mont. 284, 62 Pac. (2d) 206, 211. There this court, after stating the rule as found in *Washoe Copper Co.* v. *Junila*, 43 Mont. 178, 115 Pac. 917, based its exclusion of the proffered declaration, not on any theory the declarant had no interest in the property at the time the statement was made, but said: "The declarations made by these predecessors at the time they were made were not against the then interest of the declarant. They were declarations made in the *furtherance* of the declarant's interest as it then existed," and therefore self-serving declarations which, of course, are always inadmissible.

The rule announced in the *Laundreville Case* is supported by the authorities in many states. (*Lyon* v. *Ricker*, 141 N. Y. 225, 36 N. E. 189; *Chew* v. *Jackson*, 45 Tex. Civ. App. 656, 102 S. W. 427; *Scott* v. *Crouch*, 24 Utah, 377, 67 Pac. 1068; *Gulf Red Cedar*

*Co.* v. *Crenshaw,* 169 Ala. 606, 53 So. 812; *Wynn* v. *Cory,* 48 Mo. 346; and see 22 C. J. 234, and the many cases cited in the footnotes on that page.) It happens that in the *Laundreville Case* the statements were made by defendant's predecessor in interest, but the statements were held admissible, not as admissions against interest, but as declarations admissible under section 10531.

In all of these cases last above cited the situation was exactly the same as in this one. The fact of conveyance was sought to be proven by the declaration of the deceased grantor, and the court in each case held the evidence admissible under the exception to the hearsay rule found in our statutes as section 10531, as did this court in the *Laundreville Case. Dick* v. *King,* 80 Mont. 40, 257 Pac. 1022, has no application. There the fact of declarant's having parted with title was not in question. He had no interest in the real property and his statement could not be against interest.

It is stated by the majority that the declaration can only be used where the declarant was a party to the action or in privity with one of the parties. The majority does not seem to be able to distinguish between admissions against interest, admissible against a party whether the declarant is alive or dead, and a declaration of a deceased person contemplated by section 10531. That this is so is indicated by its reliance on sections 238 to 242 of Jones on Evidence, fourth edition. What is said by the author of that work in sections 238, 239, 240, 241 and 242, deals with admissions against interest where the declarant is alive as well as where he is dead. In section 323, where Jones does deal with *this exception* to the hearsay rule, he says: "Having considered elsewhere [referring to section 236 et seq.] the admissibility in evidence of admissions and declarations against interest by parties and those in privity with parties, we now turn to a related class of declarations against interest—that is, those made by a person who is *neither a party to the suit nor in privity with a party and who has since died.* As one of the exceptions to the general rule excluding hearsay, it has long been settled that the declarations of persons since deceased are admissible

in evidence—provided that the declarant had peculiar means of knowing the matter stated, that he had no interest to misrepresent it, and that it was opposed to his pecuniary or proprietary interest.''

A declaration against interest within section 10531, as indicated by Jones above, is admissible without regard to the parties involved. The reason for this is well stated in *Lyon* v. *Ricker*, supra: ''The court receives declarations of a deceased person against his interest, because of the likelihood of their being true, of their general freedom from any reasonable probability of fraud, and because they cannot be set up or proven until the death of the party making them. We think it plain that the declarations of the deceased grantor were admissible against the defendant, although the latter claimed nothing under the grantor, and was not, therefore, strictly in privity with him.''

The declarations within section 10531, which section is merely a statement of the common-law rule, are admissible, not to impeach or contradict a claim of a party to the suit by reason of the fact that the party or one in privity with the party had made a prior inconsistent declaration, but because under the circumstances of ''the extreme improbability of their falsehood.'' (Greenleaf on Evidence, 16th ed., 233.)

Supporting the statement found in Jones on Evidence, supra, are the cases heretofore cited: *Chew* v. *Jackson*, supra, *Scott* v. *Crouch*, supra, *Gulf Red Cedar Co.* v. *Crenshaw*, supra, and *Wynn* v. *Cory*, supra. In 22 Corpus Juris, page 232, the rule is stated thus: ''It is competent in any action to which it is relevant, although the declarant is not a party to, or in privity with, any party to the action.'' And in 20 American Jurisprudence, 469, the author says: ''A declaration against interest is admissible notwithstanding the declarant is neither a party nor in privity with a party to the action.'' (Citing many cases; and see annotation in 94 Am. St. Rep. 673.)

In 3 Wigmore on Evidence, second edition, 193, it is said: ''The statements may be used in any controversy without regard to the parties concerned.'' Instead of this statement being unsupported, as the majority says, all of the authorities, Green-

leaf, Wigmore, Jones, Nichols, Corpus Juris, American Jurisprudence, state the rule to be as Wigmore states it to be. I can find no exception, and in many of the cases cited the statute is identical with ours. A casual reading of Code sections 10509 to 10514 reveals their limitation to admissions, and they have no application to the exceptions to the hearsay rule found in section 10531.

There is no doubt in my mind that Mrs. Baxter's statements are admissible as declarations against interest in this action. If they are admissible, then they may be used to prove delivery of the deed to Poore and to establish that the instrument was in his possession and so make parol evidence of the execution and contents of the deed admissible.

Wigmore, in volume 3, second edition, section 1465, at page 198, of his work on Evidence, states the rule thus: "Since the principle is that the statement is made under circumstances fairly guaranteeing the declarant's sincerity and accuracy, it is obvious that the situation guarantees the correctness of whatever he may say while under that influence. In other words, the statement may be accepted not merely as to the specific fact against interest, but also as to every fact contained in the same statement."

The rule is stated thus in 20 American Jurisprudence, section 556, page 469: "It is admissible as an entirety including parts not against interest, if the latter are substantially connected with the same subject matter as that covered by the part against interest." (Citing many cases; and see 22 C. J., p. 237; 1 Jones on Evidence, p. 604.)

Certainly that portion of Mrs. Baxter's statement that she had delivered the deed to Poore in escrow for later delivery to the Wilsons was against interest, and it was admissible under any theory to prove delivery to him. The majority says Mrs. Baxter stated only that "Mr. Poore has the papers," and "they were in Mr. Poore's possession." She said much more than that; she said she had given the deeds to Poore in escrow to be delivered to the Wilsons when the Hamilton estate was closed or on her death. Her statement that they were delivered in

escrow for delivery to the Wilsons would make out a prima facie case that Poore still had the deeds at the time of the trial.

The majority says that even though delivery to Poore was shown, parol evidence could not be introduced since the deed may have been revocable and Poore may have returned it to Mrs. Baxter. The pleadings do not suggest any such issue. The ordinary presumption is that a deed is irrevocable, and that is true even where it is delivered in escrow. Mrs. Baxter's statement does not tend in any way to defeat that presumption, but rather supports the view, and none other, that the deed was irrevocable and so still in Poore's possession.

But, says the majority, even assuming that the deeds were executed and delivered to Poore and that the proof of their contents could be made by the declarations of Mrs. Baxter, the plaintiff must still fail because of the insufficiency of the statements to prove the contents of the deeds.

First, it must be remembered that this is not an action for specific performance or for recovery under the deeds, but rather an action for damages arising by reason of the alleged wrongful acts of the defendants in either destroying or withholding the instruments conveying the property to this plaintiff and her husband. The statement of Mrs. Baxter, according to the testimony of plaintiff, it seems to me, is sufficient to establish the contents of the deed, so far at least as the Butte Hotel property is concerned. The statement was made, not by some stranger to the deed, but by the grantor herself. In this statement she recited that the Wilsons are the grantees; that the property is the Butte Hotel property, and that she, as grantor, executed the deed. If anyone would be in a position to know what was in the deed, and as to whether it was executed, that person would be Mrs. Baxter, the grantor.

The rule announced in *Nelson* v. *Gough*, 61 Mont. 301, 202 Pac. 196, is applicable, since certainly the declarant grantor would be sufficiently aware of the contents of the document which she herself executed that she could at least state substantially its contents and import with reasonable accuracy.

To my mind, for the purpose of establishing the contents of the deed, so far as the hotel property is concerned, there can be no question as to the sufficiency of the declaration. The majority says that even though this declaration might be admitted, it is in no way corroborated as to either the execution of the deed or as to its contents. The testimony of other witnesses was offered as to statements made by Mrs. Baxter that she had left and given the property in question to the plaintiff and her husband. In addition there is testimony as to the possession of the property by Mrs. Wilson with the knowledge of Poore, and much other testimony which has some probative value in establishing the existence and contents of the deed.

Under the rule heretofore stated from Wigmore as to proof of collateral facts, Mrs. Baxter's statements should be sufficient to establish a basis for damages resulting from the loss of the stocks and bonds included in the transfer, and in an action for damages I do not conceive that it is necessary to identify the stocks and bonds in question.

By holding as the majority has, that Mrs. Baxter did not have a sufficient proprietary interest in the property at the time she made the declaration in question to constitute it a declaration against interest within the meaning of section 10531, and by further holding that if the declarations were against interest, that they would not be admissible in the present action, since the defendants do not stand in privity with the decedent, the majority has effectively nullified the section, and has announced the rule in Montana by its second holding that declarations against interest of the type Jones defines in the second class of exceptions to the hearsay rule are not admissible unless a party to the actions is in privity with the declarant, and they are admissible only under the theory that they are admissions against interest and that, so far as Montana is concerned, this court will not follow the universal rule as to admissibility of declarations against interest in real property.

I can find neither reason nor necessity for the state of Montana to depart from the rule allowing admissions or declaration of deceased persons against their proprietary interest in real

estate, as found in our section 10531 and so universally and unanimously adopted and followed by her sister states. The reason and necessity for the admission of such testimony is just as strong and just as persuasive in Montana as they are in any other state of the Union. There is nothing peculiar about our jurisprudence nor our rules of evidence, and proof of facts which require the adoption of any other rule in this state. I believe as this court did in the *Laundreville Case,* supra, and as the legislature contemplated when it enacted section 10531, Revised Codes, that this court should follow the rule stated in the text-books and the rule which is hornbook law.

If the holding of the majority as to the admissibility of the declarations of Mrs. Baxter is to stand, then it seems to me that this court sanctions and promotes the cause of injustice which the rule found in section 10531 was enacted to remedy.

Under the holding in *Staff* v. *Montana Petroleum Co.,* 88 Mont. 145, 291 Pac. 1042, 1044, to my mind it was error for the lower court to grant the motion for a directed verdict and that the cause should have been submitted to the jury. There is ample testimony here to bring this case within the rule there announced, that is, if "the evidence must be viewed from the standpoint most favorable to plaintiff, and that every fact must be deemed to be proven which the evidence tends to prove [citing cases], and that 'no cause should ever be withdrawn from the jury unless the conclusion from the facts necessarily follows as a matter of law that no recovery can be had upon any view which reasonably can be drawn from the facts which the evidence tends to establish,' " then there is sufficient evidence here to require the submission of the cause to the jury.

Rehearing denied June 15, 1940.