HOPPIN, APPELLANT, *v.* LANG, RESPONDENT.

(No. 6,240.)

(Submitted January 7, 1928. Decided January 18, 1928.)

[263 Pac. 421.]

*Real Property—Resulting Trusts—Conveyance from Father to Son — Deeds — Evidence — Sufficiency — Admissions — Statutory Presumptions as to Conveyances Rebuttable — Equity—Appeal—Jurisdiction of Supreme Court—Findings.*

Equity—Appeal—Supreme Court Without Jurisdiction to Decide Question of Fact not Passed upon by District Court.
    1. While, in equity cases, the supreme court may review all questions of fact arising upon the evidence presented in the

---

1. See 2 R. C. L. 202.
Gratuitous conveyance as raising trust in favor of natural objects of the bounty of the grantor or donor, see note in L. R. A. 1915E, 648. See, also, 25 Cal. Jur. 193.

[81 Mont. 330.]

record (sec. 8805, Rev. Codes 1921), it is without original jurisdiction to decide a question of fact depending upon conflicting evidence not passed upon by the trial court.

Same—Cause Tried, on Record Made at First Trial, by Judge Called in—Rule as to Findings Being Controlling on Appeal not Applicable.

2. Where, upon retrial, an equity case was submitted to the district court presided over by a judge other than the one who tried it the first time, on the record first made, the supreme court on appeal is in as favorable a position in considering the testimony as was the trial judge, and therefore the rule that findings made by the trial judge will not be disturbed unless the evidence strongly preponderates against them does not apply.

Same—Appeal—Presumption of Correctness of Judgment.

3. In entering upon a consideration of the evidence in an equity case presented by the record on appeal, the supreme court indulges the presumption that the trial court decided the matter correctly.

Same—Real Property—Resulting Trust—Judgment for Plaintiff—Evidence—Sufficiency.

4. Evidence *held* sufficient to warrant a finding that lands purchased by a father in the name of a son who was without financial resources and in a weak and crippled condition rendering him unable to work or earn money, title being placed in him to avoid claims of creditors of the former deemed by him undeserving, were held by the son in trust for the father, under the doctrine of resulting trust.

Evidence—Admissions in Conversations With Persons Years Prior to Trial Constitute Weak Evidence—To be Received With Caution.

5. Admissions testified to as having been made to witnesses in conversations had with the person making them many years prior to the time of trial constitute weak evidence which should always be received with caution, especially so where the person to whom the statements are attributed had a very imperfect knowledge of the language in which the conversations were carried on.

Real Property—Conveyance—Statutory Presumptions Rebuttable.

6. The presumptions that a fee-simple title passes by grant of real property unless it appears that a lesser estate was intended, that a thing delivered by one to another belongs to the latter, and that a conveyance made to one toward whom the grantor stands in a confidential relation is a gift, are rebuttable and must give way to proved facts.

[1]　Appeal and Error, 4 C. J., sec. 2652, p. 728, n. 48.
[2]　Appeal and Error, 4 C. J., sec. 2869, p. 900, n. 96.
[3]　Appeal and Error, 4 C. J., sec. 2868, p. 897, n. 83.　Executors and Administrators, 24 C. J., sec. 1392, p. 526, n. 81.
[4]　Trusts, 39 Cyc., p. 160, n. 62.
[5]　Evidence, 22 C. J., sec. 318, p. 290, n. 77.
[6]　Deeds, 18 C. J., sec. 278, p. 299, n. 66.　Gifts, 28 C. J., sec. 74, p. 672, n. 64.

*Appeal from District Court, Valley County, in the Seventeenth Judicial District; W. H. Meigs, a Judge of the Eighth District, presiding.*

ACTION by C. E. Hoppin, guardian of the person and estate of Ernestina Lang, an incompetent person, against A. Lang. Judgment for defendant and plaintiff appeals. Affirmed.

*Messrs. Hurd, Rhoades & Hallett*, for Appellant, submitted a brief; *Mr. E. J. McCabe*, of Counsel, argued the cause orally.

*Mr. Thomas Dignan* and *Mr. I. Parker Veazey, Jr.*, for Respondent, submitted a brief; *Mr. Veazey* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

This is a second appeal in an action brought by the guardian of Ernestina Lang, an insane woman, to have the decree of distribution entered in the matter of the estate of Gustav Lang, deceased, set aside and the property therein distributed to her and the defendant, A. Lang.

The record shows that A. Lang and Ernestina Lang were the parents of Gustav Lang, who died in 1920, and that at the time of his death three quarter-sections and a thirty-acre tract of land stood of record in Valley county in his name; that A. Lang was duly appointed administrator of his estate, listed the land as belonging to Gustav, and in closing the estate secured a decree of distribution in which all of the land was distributed to A. Lang as the sole heir at law of Gustav Lang. A. Lang's defense was that the land was bought and paid for with his money, and that the title was placed in the name of Gustav Lang merely for convenience and protection and was held in trust for the defendant.

On the first trial the court held that defendant was estopped by the record in the probate proceedings from asserting ownership in the land other than by the decree of distribution, and directed the entry of a decree distributing the land to plaintiff and defendant, share and share alike. Never-

theless the court properly permitted all testimony relative to
ownership to go into the record.

On appeal from the first · judgment this court held that,
under the circumstances of the case, the doctrine of estoppel
was not applicable, and that, therefore, the trial court should
have considered the evidence as to ownership and made findings
thereon; the judgment was reversed and the cause remanded
for a new trial. (*Hoppin* v. *Long,* 74 Mont. 558, 241 Pac.
636.) Therein the law of the case was declared and only the
determination of questions of fact remained.

On the retrial of the case counsel for the respective parties
submitted the matter on the record made at the first trial alone,
although the trial judge was not the judge who presided at
the first trial.

1. In the former opinion we said that: ''In order to warrant
[1] findings in favor of the defendant on this phase of the
case [resulting trust] the evidence should be clear, satisfac-
tory, and convincing to the court, and, on the cold record,
we will not presume to determine the matter, but leave it to
the trial court with its superior advantage in seeing and hear-
ing the witnesses on the stand.'' Counsel for plaintiff con-
strue this statement to mean that, on the cold record, the
testimony adduced is held to be not clear, satisfactory and
convincing. The statement does not justify the construction
placed upon it, but declares that we would not determine a
question depending for solution upon conflicting evidence and
not passed upon by the trial court. We did not consider the
evidence as to ownership of the property, as this court is
one of review, and, although authorized by statute to review
all questions of fact arising upon the evidence presented in the
record, in equity cases (sec. 8805, Rev. Codes 1921) it is not
vested with original jurisdiction to try questions of fact de
novo (*Finlen* v. *Heinze,* 32 Mont. 354, 80 Pac. 918).

2. However, as the matter was submitted to the trial court
[2] on the record made on the original trial and that record
is before us on appeal, we are not bound by the rule that find-

ings made by the trial court will not be disturbed unless the evidence strongly preponderates against them, as the trial court occupied no more advantageous position in considering the testimony than we do (*Morgan* v. *Butte Central Mining & Milling Co.*, 58 Mont. 633, 194 Pac. 496); this is so also as to findings based on conflicting evidence.

3. We enter upon a considertion of the evidence, however, [3] indulging the presumption that the trial court has decided the matter correctly.

4. It is first contended that certain findings as to the time when Ernestina Lang first became insane and the period of her initial detention in an asylum are not supported by the evidence. A showing of insanity in this case was important only as excusing laches in applying to have the decree of distribution set aside and authorizing the appointment of a guardian to prosecute the action. It might have been pertinent to inquire as to her sanity at the time Lang secured a divorce, had the legality of the decree of divorce been questioned, but no such proceeding was had. It is, therefore, apparent that no substantial right of the plaintiff was affected if error was committed in this regard, and it becomes immaterial to determine whether those findings are correct or otherwise.

5. The sole determinative question herein is as to whether, [4] under the evidence, it was shown that the property in question belonged to Gustav Lang at the time of his death, in which event his mother inherited the one-half interest therein, or whether, in fact, the property was purchased by the defendant, A. Lang, with his own money and the bare legal title was held by Gustav Lang in trust for his father, thus creating a resulting trust. (*Meagher* v. *Harrington*, 78 Mont. 457, 254 Pac. 432.)

The plaintiff's case in chief consisted of the introduction of recorded deeds to the property in which Gustav Lang is named as grantee, the records in the probate proceeding above referred to, and proof that Ernestina Lang was, at the time of

the trial and for a long period prior thereto, hopelessly insane and confined in an asylum in Wisconsin.

The defendant's testimony is, in substance, as follows: A. Lang and Ernestina Lang were married in Russian Poland some time prior to 1892 and had two sons, Rudolph and Gustav; in 1892 the family migrated to Canada and later located in North Dakota. In 1898 Ernestina Lang deserted her family, and three years later the defendant secured a decree of divorce. At the time of his wife's desertion, A. Lang had filed on a homestead entry in North Dakota, but had not yet established residence upon it and, at that time, he had no property standing of record in his name, but was supporting his family by his labor on rented lands.

Lang later acquired three quarter-sections of land in North Dakota, but subsequently conveyed this land as a down payment on some city property in Winnipeg; he failed to make payment on the Winnipeg property and returned his contract to the parties from whom he received it, who later threatened to cause him trouble over the unpaid installments. In 1916 Lang with his two sons removed to Valley county, Montana, and Lang there purchased the land which is the subject matter of this action. Fearing trouble from his Canadian creditors, but feeling that he had more than satisfied any just claim they might have against him, he had the conveyances made to his son Gustav. Gustav was a cripple from childhood and was always weak and ailing and unable to do more than assist with housework; he never earned or received any money from any source, but the father deposited his funds in the name of Gustav.

In 1916 Lang was advised that land values had advanced in Canada and his creditors there had realized more on the property in which he was formerly interested than the amount of any claim they had against him. Thereafter Gustav suggested that the property in question be conveyed to A. Lang, the true owner, but Lang thought there was no necessity for

so doing and the title remained in Gustav until his death in 1920.

Asked why he did not tell his attorney in the probate proceeding that Gustav's mother was living, Lang replied: "I don't know why, because it is this. I am divorced from my wife so many years, and I thought that is the end of everything; then I come from the old country, Russia, and in Russia a woman had nothing to do with a man's land, and even in Canada a woman has nothing [to do] with the land, and so I thought this is the same law here and that nobody has nothing; because she didn't have one penny, with it I forget her altogether, and I am forgetting."

J. L. Truscott, from whom more than half of the land was purchased, testified that he dealt solely with A. Lang, who made the payments on the land; that he knew nothing of Gustav until the time came for making the deed, when A. Lang requested him to make it in the name of Gustav.

Rudolph Lang corroborated his father's testimony in all particulars relevant here; he testified that Gustav never had any money or any means of acquiring money; that he was present at the home in North Dakota when it was agreed between the father and Gustav that any property purchased in Montana should be taken in the name of Gustav for the sake of convenience and protection; that after the danger of trouble with the Canadian creditors had passed, Gustav on several occasions suggested that he transfer the property to defendant.

Counsel for plaintiff contend that Rudolph's testimony is not entitled to any greater weight than is that of his father, as he was dependent upon his father's bounty, and it was to his interest to please his father to the end that that bounty be not withdrawn. We do not so view his position, even if we concede that such considerations might influence a witness to commit perjury. Rudolph was an able-bodied man capable of supporting himself by his labor, whether that labor was employed by his father or a stranger, and, if influenced in giving testimony by considerations of his own advantage, it would

seem that his interest would rather be on the side of his mother whose sole heir he would be, whose condition rendered it impossible to disinherit him, and whom he had visited in her confinement when he displayed marked affection for her. He would, naturally, want to see her well taken care of and would not want to see her defrauded of her interest in the property, if, in fact, she had such interest.

In rebuttal of defendant's proof, plaintiff introduced testimony as to alleged admissions and declarations made by the defendant before the commencement of the action, all of which were denied by the defendant on the stand. Witnesses testified to different statements made at different times; thus one witness said that at one time the defendant remarked, "We have plenty of money, me and my boys don't have to work"; another, that he said at one time, "We have land in Washington and Canada." A woman testified that while passing a thirty-acre tract on which the Lang family resided, Lang told her that the place belonged to Gustav, and another witness testified that, after Gustav died, defendant said that Gustav was worth $40,000 at the time of his death; another that Lang had said, "We are worth $150,000."

In 1917 Lang loaned $2,000 to a church; the treasurer of the church testified that Lang said, at the time, that the loan was from the two boys equally, and it was shown that, after the death of Gustav, Lang agreed to remit $1,000 of the amount due, as a memorial to Gustav.

A witness testified that Lang told him that, when he married Ernestina Lang, she was wealthy, and that, with the start given by her money, the family had accumulated the property in question.

The record does not disclose that A. Lang or any member of the family had ever acquired any considerable amount of money or property, but rather that, after a hard struggle for a period of thirty years, the net result of their united labors was the acquisition, in the name of Gustav Lang, of the property in question, which was inventoried in Gustav's estate at

a value of $5,000, a piece of land in Washington and another in North Dakota, the value of which is not given.

While defendant carried his money in a bank in the name of Gustav, at the time of Gustav's death there was no money on hand to be listed in the estate, and Gustav's physical condition was such that he could not earn money.

Counsel for plaintiff urge that Gustav might have obtained his money from his mother. Defendant testified that, at the time of their marriage, Ernestina had 600 rubles, which might constitute wealth to a Russian peasant in the "eighties," but a ruble was worth only forty cents when the family came to America, and it does not appear from the record what became of this "wealth."

Of the class of testimony on which plaintiff relies the author [5] of the treatise on Evidence, in Corpus Juris, says: "It is a common experience of those dealing with human testimony that conversations are very imperfectly remembered, particularly where the exact language is sought to be recalled after a considerable lapse of time, where the words spoken were of indifferent interest to the hearer, so that he would have no occasion to treasure them in his memory, or where the statement was made in loose, casual, or random conversation. * * * The testimony as to admissions * * * is easily fabricated, or the statement may have been imperfectly comprehended, wrongly interpreted, or misunderstood by an honest reporting witness. For these reasons such testimony is regarded as weak and even dangerous evidence, which should always be received with caution." (22 C. J. 289, and cases cited; see, also, *McCrimmon* v. *Murray*, 43 Mont. 457, 117 Pac. 73, and *Smith* v. *Whittier*, 95 Cal. 279, 30 Pac. 529.) This is particularly so where, as here, the person to whom the statements are attributed had a very imperfect knowledge of the language in which the conversation was carried on.

When we consider the evidence regarding Gustav's condition, physically and financially, and the manner in which the lands

were acquired, and the trouble Lang had had theretofore in attempting to meet his obligations, we cannot credit the statements made, that, in 1917–1920, Gustav was worth $40,000 or any fraction thereof, or that the family jointly was worth $150,000 or anything in excess of the value of the lands described in the testimony, and are constrained to agree with the trial judge that, if the statements were made by defendant at all, they "were mere braggadocio, not based on actual fact, * * * born of vanity from attention given ※ * * at being called or referred to as a wealthy man."

6. In addition to the testimony concerning admissions, [6] plaintiff relies upon the presumptions (a) that a fee-simple title passes by a grant of real property unless it appears from the grant that a lesser estate was intended (sec. 6866, Rev. Codes 1921); (b) that a thing delivered by one to another belongs to the latter (sec. 10606, subd. 8, Id.); and (c) that a conveyance, made to one toward whom the grantor stands in a confidential relation, is a gift (*Clary* v. *Fleming*, 60 Mont. 246, 198 Pac. 546). These presumptions are, however, rebuttable and must give way to proved facts. (*McQuay* v. *McQuay*, ante, p. 311, 263 Pac. 683.)

7. After a painstaking canvass of the evidence the trial court concludes its findings as follows: "A careful reading of the record and considering all the facts and circumstances in this case, relative to this family, from the time they came to North Dakota, and from North Dakota to Montana; the purchase of the land in controversy, corroborated by the vendor as to more than half of it; the taking of title in the name of Gustav, the son, at the direction of the father; his accurate knowledge of the money on hand and disposition thereof; the long crippled and weak physical condition of the son, Gustav; the record, silent as to any business transaction by him whatsoever—is clear, convincing, and satisfactory that Gustav Lang held only the naked legal title to these lands, in trust for his father, A. Lang, and so the court finds."

With this finding we are constrained to agree, and, so agreeing, the judgment must be affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MYERS, STARK and GALEN concur.