NETTIE M. PLATTS, as Administratrix of the Estate of T. S. Platts, deceased, Plaintiff and Respondent, v. WILLIAM PLATTS and ALICE V. PLATTS, Defendants and Appellants.

No. 9713.

Submitted June 30, 1958. Decided January 22, 1959.

334 Pac. (2d) 722.

Walchli, Korn & Warden, Kalispell, for appellants.
Merritt N. Warden, Kalispell, argued orally for appellants.
Rockwood & Sykes, Grant Bakewell, Kalispell, for respondent.

Grant Bakewell, and Robert C. Sykes, argued orally for respondent.

MR. JUSTICE CASTLES:

The defendants appeal from a judgment entered against them on findings of fact and conclusions of law. Plaintiff, Nettie M. Platts, the respondent, suing as the administratrix of T. S. Platts, deceased, asserts the deceased's ownership of certain Flathead County ranch lands by a $20,450 cash down payment on a $60,450, four percent, $2,500 annual payment contract for deed. She also asserts deceased's purchase of some $5,000 worth of livestock and equipment for the ranch. Plaintiff prays that a trust be impressed for the benefit of deceased's estate on the ranch real property in an amount to be determined by the court, and on all of this $5,000 in personal property. Whether the trust is to be impressed as a constructive trust springing from fraud or as a resulting trust raised as a legal presumption, and the amount thereof, is left unclear in the pleadings.

The case was heard, proposed findings of fact and conclusions of law, with briefs, were submitted by both sides and the matter was taken under advisement. Later, the court reopened the case, heard additional testimony and, thereafter, on its own findings and conclusions, ordered judgment entered for plaintiff decreeing that, to the extent of the cash down payment, defendants hold the purchase contract as trustees for the estate of T. S. Platts, and ordering that defendants surrender to the plaintiff administratrix whatever of the personal property was in their possession and that defendants pay to plaintiff the reasonable value of whatever was not.

Respondent administratrix is the widow of T. S. Platts. She and the deceased's two adult sons by a prior marriage are the heirs at law. Deceased died intestate. The land and chattels in dispute are a substantial portion but not all of the T. S. Platts estate. The disputed personal property is a portion of the ranch livestock and equipment, all bought separately after the land was acquired, and all owned or claimed as owned by defendants.

Defendant appellants are William and Alice V. Platts, husband and wife, a son and daughter-in-law of deceased T. S. Platts. Neil Platts, the other son and heir is not a party. However, he testified for plaintiff and stands to gain materially if plaintiff is sustained.

Defendant appellants are the sole record ranch contract purchasers and have always been in possession. They deny fraud, deny agreement to conceal or defraud, deny trust and claim by gift from deceased. The contract sellers, who retain all title to the ranch lands, likewise are not made parties.

Throughout, defendants' counsel has earnestly contended that no cause of action has been pled. Additionally, he predicates error under R.C.M. 1947, sec. 93-401-27, subd. 4 (deadman's statute) by admission of deceased's purported declarations against his interest in real property. The district court's earlier rulings sustaining defendants' general demurrers to plaintiff's first two complaints and rejecting plaintiff's first testimony of deadman's declarations, when challenged as incompetent, tend to sustain the specifications of error urged by defendants' counsel on appeal. Later rulings, sustaining the second amended complaint and admitting these purported declarations of the deceased, upon which a resulting trust is raised by the trial court, are the basis for the errors specified on appeal.

The testimony shows that neither deceased nor his widow ever resided on the disputed premises. About a year before his death, deceased located the property as suitable for his children, the defendants, signed the earnest money receipt, made a $1,000 earnest money deposit to hold the property against other prospective buyers, and, including the earnest money, advanced the $20,450 down payment. After the purchase he counseled in management, paid for some improvements and added the livestock and equipment in dispute. All this is admitted.

Deceased was of advanced age. Plaintiff is a second wife, with whom deceased was in bitter marital discord during the two years and ten months that elapsed between their marriage and his death. Neither had filed for divorce.

A summary of plaintiff's testimony offered to confirm the fraud and to raise the resulting trust is that deceased had said (1) he was buying a ranch, or had said (2) he and his defendant son were buying a ranch, or had said (3) he and this son were going to operate the ranch together, also that deceased had said (4) he was putting the ranch in his son, defendant William Platts' name to cover up, and that deceased had said (5) he was putting the ranch in this defendant's name temporarily until deceased could get rid of his wife, she being the widow, now suing as administratrix, alleging fraud and praying for a trust. These are declarations certainly against the interest of the wife and other son but hardly against the interest of the deceased.

The testimony as to buying a ranch was given by casual acquaintances, and is of no great probative value. What ranch, where, when, and what details are unspecified. None of this testimony is inconsistent with gift. Testimony as to intention to cover up comes from a former partner who on cross-examination admitted he had appropriated some of deceased's favorite outdoor equipment and had returned it only on the demand of deceased's defendant son.

Testimony as to the cover-up pending deceased's getting rid of his wife comes only from Neil Platts, the other son. It narrates the proposed cover-up as a future plan on a future purchase and is given by a witness, who gains materially if a trust is impressed.

Against this testimony we find the attorney who prepared the sale contract representing the sellers, and these sellers all testifying that the purchasers were William and Alice V. Platts, the defendants, and no others. The sellers and their attorney are not interested, were not impeached and were the persons most concerned with being sure who was actually purchasing the property. For them it was a matter not of a later inheritance but an immediate necessity for careful scrivening and of sound business. Other testimony indicates the deceased clearly recognized that his age had become such he could expect little future advantage from owning a ranch.

As stated, only the defendant appellants executed the ranch sale contract as purchasers. They immediately moved to the ranch, stocked it with machinery and livestock at their own expense, have themselves operated it since, have paid all insurance and taxes and have made the annual ranch purchase payments. Their position is that they are the sole purchasers and owners and that whatever was contributed to the purchase price by deceased or added to their equipment and livestock was contributed and was added as a gift by deceased out of deceased's bounty and in his appreciation of defendant's loyalty to him.

Testimony as to past family dealings spans a period of two decades and principally reflects a post mortem dispute between an intestate's children and a recent second wife. It is inconclusive and confusing. But at least one undisputed item does suggest deceased's attitude toward defendants: it was deceased's son, defendant William Platts, to whom deceased entrusted joint access to deceased's safety deposit box, and it was this son's wife defendant Alice V. Platts, a nurse, who faithfully tended deceased during his last illness.

In summary, nothing in the record establishes that the gift claimed by the defendant appellants was not intended as claimed; nothing in the record confirms that any fraud was attempted in any agreement with defendants, as alleged by the plaintiff respondent.

As a consequence, under statutes, we have a rebuttable presumption of a resulting trust (disregarding the allegation of fraud, which suggests a constructive trust) contradicted by an overriding presumption, under decisions, of a gift. R.C.M. 1947, secs. 86-103, 86-203, 86-210; McQuay v. McQuay, 81 Mont. 311, 263 Pac. 683; Lewis v. Bowman, 113 Mont. 68, 121 Pac. (2d) 162. Trusts may be raised only on evidence which is clear, convincing and practically free from doubt. McQuay v. McQuay, supra; Lewis v. Bowman, supra.

We are considering an appeal in equity. This requires that we review "all question of fact arising upon the evidence

presented in the record, whether the same be presented by specifications of particulars in which the evidence is alleged to be insufficient or not, *and determine the same,*" unless new trial or further hearing be ordered in the court below. R.C.M. 1947, sec. 93-216. Emphasis added. Bond v. Birk, 126 Mont. 250, 264, 265, 247 Pac. (2d) 199; Bradbury v. Nagelhus, 132 Mont. 417, 319 Pac. (2d) 503.

The cause is pleaded in two counts, the first alleging a trust as to the realty, the second as to the personalty. To meet the specifications of error we must (1) determine whether or not a cause of action has been stated, in doing which we must also discover the theory of plaintiff's action, (2) decide the competency of the testimony offered as deceased's declarations against interest and whether it is admissible hearsay under the deadman's or the *res gestae* rules, and (3) raise or refuse to raise a resulting trust. If the trust alleged by plaintiff fails, the gift alleged by defendants stands.

(1)   Theory of plaintiff's action.

As earlier writers have remarked in similar appeals, we find it "difficult to conclude * * * what particular theory of recovery plaintiff's attorney had in mind." Lynch v. Herrig, 32 Mont. 267, 273, 80 Pac. 240, 242. Plaintiff alleges fraud and prays for lien on the disputed property. What is plaintiff's theory? Plaintiff's brief says it is the theory of a resulting trust.

Trusts are either voluntary or involuntary, R.C.M., sec. 86-201, and otherwise are classified as express or implied. Express trusts depend on intention, implied trusts arise by operation of law, R.C.M. sec. 86-203. Implied trusts are subclassified as constructive or resulting. Constructive trusts spring from "fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act", R.C.M., sec. 86-210. The test of a constructive trust is fraud, Bradbury v. Nagelhus, supra. Resulting trusts are presumed to rise "when a transfer of real property is made to one person, and the consideration thereof is paid by or for another," R.C.M., sec. 86-103. But when the consideration for the purchase of real property moves from

a parent and the title is taken by a child, a gift is presumed to the child, not a trust for the parent. McQuay v. McQuay, supra; 54 Am. Jur., Trusts, sec. 205, p. 160; 89 C.J.S. Trusts, sec. 129 b, p. 992. In a word, within the normal bounties of the parental relationship, the presumption is gift, not trust. Both presumptions are rebuttable. McQuay v. McQuay, supra.

Coming now to the trust recitals of plaintiff's second amended complaint, and editing it first to accentuate allegations of an express trust, we find plaintiff saying that the "down payment * * * was all paid by * * * [the deceased] * * * with his own funds * * * that said contract was placed in the name of the defendants with the specific understanding and agreement between the deceased and the defendants that as soon as the deceased was legally separated from his wife, the said contract of purchase would be assigned to * * * [the deceased] *and such transfer constituted a trust for the benefit of said* * * * [*deceased*]". Emphasis added.

No writing embodying this alleged "specific understanding and agreement" is alleged or attached as exhibit, nor was any proved. Therefore, in the above form the trust is bottomed on parol and void under the statute of frauds. R.C.M., sec. 86-102, sec. 86-105, sec. 86-108; Lynch v. Herrig, supra, 32 Mont. 267, 80 Pac. 240; 2 Bancroft's Code Pleading, sec. 2397, p. 1192. (Ten Year Supp.)

Plaintiff having stood on the theory of a resulting trust, the foregoing might be omitted were it not for the fact that, as will appear below, this alleged agreement between deceased and the defendants is the essence of the district court's finding for the plaintiff. Likewise, any consideration of constructive trust could be omitted except for the emphasis placed by the plaintiff on fraud and the findings of concealment made against defendant by the district court.

As stated, no valid express trust is alleged. If we examine the complaint for an implied constructive trust, we find that the fraud which the court's findings refer to as concealment is charged as a fraud committed by the deceased upon the wife of

the deceased. Fraud is the gravamen of a constructive trust. Morton v. Union Central Life Ins. Co., 80 Mont. 593, 261 Pac. 278, and cases cited at page 612 of 80 Mont., at page 282 of 261 Pac.

Plaintiff's first count alleges that ''the said deceased was very bitter toward his wife * * * and has threatened to and intended to divorce or separate from her. By reason thereof, he had the contract for the purchase of said premises placed in the name of the defendants so as to cheat and defraud his wife * * * out of any share of his estate in case divorce proceedings were commenced; that said contract was placed in the name of the defendants with the specific understanding * * * [as quoted above from the complaint] ; that the said defendants were parties to said fraud and well knew, and still know, that they were and are holding the said contract in their names as trustees for the benefit of * * * [deceased] and his estate, *and they agreed to do so* until the deceased was separated from his wife.'' Emphasis added.

Disregarding the unwarranted inference of community property rights, foreign to Montana, the plaintiff administratrix is here alleging a fraud instigated by the deceased party in whose shoes she stands as his administratrix. Further, during deceased's lifetime he could give his money to anyone he desired, and until deceased died he had no *estate* of any nature out of which anyone could be defrauded. No man is an heir of the living.

The discord between the deceased and his wife is unfortunate, but this does not in itself raise a resulting trust, render a gift illegal, or rebut the presumption that a gift was made. Gift is *per se* no badge of fraud. The right to own includes the right to give away. These considerations apply equally to plaintiff's second count going to the ranch livestock and equipment.

The form of plaintiff's complaint and the findings of the court have necessitated our proceeding to the discussion of resulting trust by a process of elimination, although when faced with argument on general demurrer plaintiff's counsel stood on

the theory of resulting trust and although in overruling defendant's third general demurrer the court adopted this theory.

As shown above, if the complaint be taken as alleging an express trust, the first count fails by parol. If the complaint be taken as alleging a constructive trust, both counts fail because the fraud alleged is committed by the deceased on no party to the action, so that in effect the deceased through his personal representative is seeking to recover on his own fraud for the benefit of a stranger to the action. This may not be done, R.C.M. 1947, sec. 49-109. If the complaint be taken as alleging a resulting trust both counts are subject to the legal presumption of gift.

But the complaint also fails for further reasons. These reasons are that the first count recites an uncompleted executory contract and alleges no title in defendants, fails to show what aliquot portion, if any, of the land is allocable to deceased in consideration for his down payment, and terminates with a prayer for a "decree adjudging that the estate of * * * deceased, has an interest and equity in said real estate, and determining the amount thereof, and imposing a lien on said real estate to the amount of such interest", although the aliquot portion is not pleaded and the supporting allegation is that deceased is the sole purchaser. See discussion 2A Bogert, Trusts and Trustees, secs. 457, 459, 461. Title being still in the sellers, at common law it would have been said there has been no livery of seisin. R.C.M. 1947, sec. 86-103, under which resulting trusts are raised "is but declaratory of the common law." Lynch v. Herrig, supra, 32 Mont. at page 274, 80 Pac. at page 242.

"* * * It is another well-recognized principle that the money paid must be an aliquot part of the entire purchase price.

*       *       *       *       *       *       *       *

"It seems clear, therefore, that this action could not be maintained at the time of the commencement of the suit for the purpose of establishing a resulting trust in the land, because the legal title thereto did not rest in the party sought to be charged

therewith. A resulting trust in land can only be declared when the legal title has passed to the party against whom the trust is sought to be declared." Lynch v. Herrig, supra, 32 Mont. at pages 275, 276, 80 Pac. at page 243.

Appellant's first specification of error is well taken.

(2) Testimony admissible under deadman's and *res gestae* statutes.

Appellants specify error of the admission of hearsay testimony that deceased had said he was buying a ranch and covering up the purchase, etc., as summarized above. Appellants' objection is that the statements are not admissible as declarations against interest under any exception to the rule which excludes hearsay testimony. The applicable statute permits testimony of "the act or declaration of a deceased person done or made against his interest *in respect* to his *real property*". R.C.M. 1947, sec. 93-401-27, subd. 4. Emphasis supplied.

Respondent contends that no error was committed, arguing also that the testimony is admissible under the *res gestae* rule. Under our statutes the *res gestae* rule applies, "Where, also, the declaration, act, or omission forms part of a transaction, which is itself the fact in dispute, or evidence of that fact." R.C.M. 1947, sec. 93-401-7.

By the wording of section 93-401-27, Subd. 4, personal property is excluded, so that in no event would deceased's statements be competent testimony in support of plaintiff's demand for a trust in the personal property. In support of the district court's ruling which admitted the testimony of the alleged land purchase and cover-up by deceased, respondent cites the case of Thompson v. Steinkamp, 120 Mont. 475, 187 Pac. (2d) 1018. Gift within the parental relationship is not an element of that case. The citation is off point.

Counsel for appellants urge the majority opinion in Wilson v. Davis, 110 Mont. 356, 103 Pac. (2d) 149, which holds that declaration against interest are excluded from testimony admissible in personal property disputes and are admissible in real property disputes as an exception to the hearsay rule only

when made by a declarant then holding title to the disputed real property. Here it should be noted that the declaration to which the former partner testified is, of all the testimony, the only direct statement indicating completed purchase by the deceased. The testimony is: "He told me he bought the place and put it in Bill's [defendant William Platts] name to cover up." The only other testimony suggesting fraud is narrative and comes from the son who stands to gain if the trust is raised. This testimony is that the deceased said to this son, Neil Platts: "I might as well tell you I am buying a ranch and putting it in Bill's name for the present time until I get rid of my wife." This is a narrative statement of future intentions. It is not a statement of present ownership.

Respondent's argument on appeal lays more stress on *res gestae* than on declarations against interest, undoubtedly for the reason that admissible *res gestae* are not limited to owned real property. *Res gestae* testimony is admissible on the assumption of spontaneity, immediacy and relevance. See Jones on Evidence, secs. 320, 321 and 323 (5th Ed.), for discussion in order above named. Narration is not *res gestae;* it is story not statement. " '*Res gestae* are events speaking for themselves through the instinctive words and acts of participants, and not the words and acts of participants *when narrating the events.*' 1 Nichols on Applied Evidence, 384." Wilson v. Davis, supra, 110 Mont. at page 368, 103 Pac. (2d) at page 155.

As pointed out in Wilson v. Davis, *res gestae* are admissible because they are spontaneous and spontaneous declarations are admissible because made when "there must have been an interest at the time to say the contrary." Wilson v. Davis, supra, 110 Mont. at page 369, 103 Pac. (2d) at page 156, quoted by the court from 3 Wigmore on Evidence, sec. 1459(3) (2d Ed.).

Some of deceased's purported statements date from before the purchase was completed by appellants in their own names, some date thereafter. None are contemporaneous with the pur-

chase. As we have pointed out, so far as the sellers knew they were dealing only with defendants. We have commented above on the doubtful credibility of the one witness on which deceased's statement reflecting a completed purchase must rest.

This court's last discussion of the deadman's statutes, R.C.M. 1947, secs. 93-401-9, 93-401-10, 93-401-27, subd. 4, 93-701-3, subd. 3, is found in In re Vincent's Estate, ...... Mont. ......, 324 Pac. (2d) 403, 410. There the dangers incident to admitting hearsay testimony of what a deceased is said to have one time said, before or after or even during a transaction, are discussed. It is elementary, that such exceptions to the prohibitions of the hearsay rule be expanded with great caution. The comparative credibility of the witnesses in the present case is the best example. What is said in In re Vincent's Estate is of equal applicability here:

"The able presiding judge * * * followed a well-established and proper liberal practice when trying a case without a jury, of giving the litigants an opportunity to fully develop any enlightening facts.

"We seriously question, and we are sure the trial judge did, whether it was proper to admit the alleged oral statements." In re Vincent's Estate, supra, quoting at length from Marcellus v. Wright, 65 Mont. 580, 594, 212 Pac. 299.

See also Mowbray v. Mowbray, 131 Mont. 580, 312 Pac. (2d) 995, and Cox v. Williamson, 124 Mont. 512, 227 Pac. (2d) 614. Likewise see Hoppin v. Lang, 81 Mont. 330, 263 Pac. 421, also dealing with gift as opposed to resulting trust.

The second specification of error is well taken.

(3) Resulting trust.

Trusts must be founded on evidence which is unmistakable, clear, satisfactory and convincing. Bradbury v. Nagelhus, 132 Mont. 417, 319 Pac. (2d) 503, and authorities cited, supra. As shown above, within the bounties of the family circle, a gift is presumed when the consideration proceeds from the parent and the purchaser is the child. Baird v. Baird, 125 Mont. 122, 232 Pac. (2d) 348; McQuay v. McQuay, supra, 81 Mont. 311,

263 Pac. 683; Lewis v. Bowman, supra, 113 Mont. 68, 121 Pac. (2d) 162; 89 C.J.S. Trusts, sec. 129, p. 992.

Plaintiff prays for a trust in an equity. When a resulting ▮▮ trust is claimed in less than all the land conveyed, "it must be clearly shown that the *cestui que trust* furnished an aliquot part of the consideration *for the purchase of a definite part of, or interest in, the property."* First State Bank of Philipsburg v. Mussigbrod, 83 Mont. 68, 93, 271 Pac. 695, 704. Emphasis supplied. Lynch v. Herrig, supra, 32 Mont. 267, 80 Pac. 240.

Plaintiff's complaint prays merely for a lien to the extent of the down payment on the ranch. What area is this? How many aliquot acres shall be liened? But plaintiff's prayer rests on a supporting allegation that deceased was sole purchaser. Her position is contradictory.

Plaintiff's testimony is likewise contradictory. Some is that deceased said he was buying a ranch or had bought a ranch; other is that he said he and his son Bill were buying a ranch or were going to operate a ranch together. Such evidence, even if admissible, is neither clear, convincing nor free from doubt. As shown above, the sellers considered they were dealing only with defendants. Of all the witnesses, the sellers were the ones most concerned with knowing the true purchaser.

The contract is in defendants' names. Testimony as to their actions confirms them as sole purchasers. It is defendants who principally stock and equipped the ranch. It is defendants who forfeit by default. By now the total of their annual contract and interest payments well exceed the amount the deceased advanced for the down payment.

Much was made at first of the contract clause permitting defendant buyers to assign their equity to the deceased. Later testimony shows this provision was requested not by deceased but by the sellers for the sellers' protection. They considered the deceased reliable but reserved the right to disapprove any other proposed assignee of the purchase contract.

It is sometimes said that where only the purchasers are named

as mortgagees in a purchase money mortgage, no trust results to one who furnished the down payment. 54 Am. Jur., Trusts, sec. 217, p. 167. By parity of reasoning that principle is as applicable to a purchase contract balance as to a purchase money mortgage.

The trial court has found, in words the plaintiff has alleged, "that said purchase contract was placed in the name of the defendants with the *specific understanding* and agreement between the said T. S. Platts and the defendants that T. S. Platts would be and remain the beneficial owner thereof, and that as soon as the said T. S. Platts was legally separated from his wife, the said contract of purchase would be assigned to the *defendant* [sic] T. S. Platts; that the *said defendants agreed* to hold the title to said land for T. S. Platts for his benefit." Emphasis supplied.

Undoubtedly the court intended to find that T. S. Platts is the deceased, not the defendant; but disregarding this as inadvertent and remembering that this finding is the crux of the fraud and the foundation for overcoming the legal presumption of gift, the only supporting testimony anywhere is that from (1) the witness of doubtful credibility and that (2) of the interested son. Their exact words are recited above. Even assuming that what these witnesses say the deceased said is admissible, the testimony says only that T. S. Platts, the deceased, and Nettie M. Platts, his wife, were in marital discord and that T. S. Platts took steps to dispose of his money. So long as it was his money, this was his right.

That testimony still leaves the alleged collusive agreement ▆▆▆ by defendants, William Platts and Alice V. Platts, an unsupported inference. Has the fraud, which presumes the trust and denies the gift been proved by unmistakable, clear, satisfactory and convincing testimony? The record speaks for itself. On the whole record, deceased's actions give every indication of deceased's intention to make a gift to defendants. Likewise on the whole record, defendants' actions confirm them as grateful children and bona fide sole purchasers.

As was pointed out by Mr. Justice Myers, speaking for all the court in Nelson v. Wilson, 81 Mont. 560, 568, 264 Pac. 679, 682: "The evidence discloses nothing was said about loan, advance, repayment, reimbursement, expectancy, conditions; that there was no agreement or understanding; there was nothing said. Under those circumstances the law presumes it was a *gratuity.*" Emphasis supplied. Here we find no testimony, unmistakably, clearly, satisfactorily and convincingly revoking that presumption.

The third specification of error is well taken.

The judgment of the district court is reversed, the lien thereof is discharged, and the defendants are restored in their ownership of all the property described, both real and personal. It is so ordered.

MR. JUSTICE BOTTOMLY, ACTING CHIEF JUSTICE, and MR. JUSTICE ADAIR, concur.

MR. JUSTICE ANGSTMAN:

I concur in the result reached in the foregoing opinion. So far as it rests on the ruling in Mowbray v. Mowbray, 131 Mont. 580, 312 Pac. (2d) 995, I concur on the sole ground of stare decisis.

MR. CHIEF JUSTICE HARRISON did not participate in this appeal or the determination thereof.