FILED

05/26/2026

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 25-0818

DA 25-0818

IN THE SUPREME COURT OF THE STATE OF MONTANA

2026 MT 111

IN THE MATTER OF THE ESTATE OF:

BRADLEY JAMES HALER,

     Deceased.

APPEAL FROM:   District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DP-22-1A
Honorable Peter B. Ohman, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

          Brand G. Boyar, Dana L. Hupp, Worden Thane P.C., Missoula, Montana

     For Appellee:

          Thomas J. Stusek, Stusek Law Firm, P.C., Bozeman, Montana

Submitted on Briefs:  May 13, 2026

Decided:  May 26, 2026

Filed:

                                   _____
                                        Clerk

Justice Katherine M. Bidegaray delivered the Opinion of the Court.

¶1      Jason Haler appeals from the final Order and Judgment of the Eighteenth Judicial District Court, Gallatin County, in the probate of the Estate of Bradley James Haler. The District Court concluded that funds associated with an $80,000 cashier's check that Bradley James Haler obtained before his death were the individual property of Rebecca Haler and not an asset of the intestate estate. We address the following restated issue:

> *Whether the District Court erred in holding that the funds associated with an uncashed $80,000 cashier's check were not an estate asset.*

We reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2      Bradley James Haler (Bradley) died intestate on November 25, 2021. He was survived by his wife, Rebecca Haler (Rebecca), and by his son from a prior marriage, Jason Haler (Jason). Rebecca was appointed personal representative of Bradley's estate in January 2022. Because at least one of Bradley's surviving descendants is not a descendant of Rebecca, Rebecca's intestate share is governed by § 72-2-112(4), MCA, which provides the surviving spouse "the first $150,000, plus one-half of any balance of the intestate estate." Jason receives the remaining balance under Montana's intestacy statutes.

¶3      This appeal concerns an $80,000 cashier's check. On October 22, 2021, approximately one month before his death, Bradley withdrew $80,000 from a savings account associated with Bradley's Custom Carpet and used the funds to purchase a cashier's check. The record reflects that the cashier's check was payable to Bradley himself. Rebecca was an authorized signer on the account, but Jason argued below and on

2

appeal that the account documents identified Bradley as the owner and Rebecca only as an authorized signer.

¶4      The account terms provided that authorized signers may make account transactions as agents but have "no ownership or rights at death unless named as Pay-on-Death beneficiaries." No pay-on-death beneficiary was designated on the account. Montana's Uniform Probate Code similarly provides that the "[d]eath of the sole party or last-surviving party terminates the authority of an agent," § 72-6-205(3), MCA, and that "[a]n agent in an account with an agency designation has no beneficial right to sums on deposit," § 72-6-211(4), MCA.

¶5      During discovery, Rebecca was asked about the $80,000 withdrawal. In her deposition, Rebecca testified that she had no recollection why Bradley withdrew the money, that she did not have anything to do with the account, that Bradley did not give her the $80,000, that she did not know where the money went, that she found no cash when completing the estate inventory, and that she did not know what happened to it. She also testified that, to her knowledge, Bradley's health was good and that she did not believe he was under a physician's care at the time.

¶6      After the deposition, Rebecca filed a verified P.R. Response. In that filing, she stated that after Bradley's death she reviewed the October-December 2021 bank statement and noticed the $80,000 withdrawal. She stated that a personal banker informed her that Bradley had used the $80,000 to purchase a cashier's check payable either to "cash" or to himself; that the cashier's check had not been cashed; and that, because Rebecca had been an authorized signer when the original check issued, the bank could release the funds to

3

her through a new cashier's check. Rebecca further stated that her then-counsel advised her the funds would not be considered estate property because the cashier's check was issued before Bradley died. Rebecca deposited the $80,000 into her personal account in February 2022.

¶7 At a December 19, 2024 status hearing, Jason's counsel sought further discovery regarding the $80,000. The District Court denied further discovery but ordered Rebecca to obtain an affidavit from prior counsel and documentation regarding the $80,000. The court later set an evidentiary hearing, but the parties entered a stipulation resolving most disputes and narrowing the remaining issues. As relevant here, they stipulated that the District Court would decide "[w]hether the disputed $80,000 should be considered an Estate asset or an asset of Rebecca." They also stipulated there was no need for further testimony and jointly requested that the hearing be vacated.

¶8 On August 22, 2025, the District Court entered its Order Re Remaining Disputed Issues. The court acknowledged that it had a "limited record," but proceeded because the parties had requested a decision without further evidence. The court concluded that clear and convincing evidence supported Rebecca's retention of the $80,000 as her own property. The court reasoned that Bradley previously had given Jason a $50,000 cashier's check, that Bradley later procured the $80,000 cashier's check, and that there was "no information before the Court" that Bradley would have obtained the check and left it in the home for any reason other than Rebecca's benefit. Relying on *Platts v. Platts*, 134 Mont. 474, 334 P.2d 722 (1959), the court determined that the record showed Bradley's intent to make a gift to Rebecca.

4

¶9     The District Court also concluded that the cashier's check was a negotiable instrument under § 30-3-104(7), MCA; that Bradley left it in the home and thereby "constructively delivered" it to Rebecca under § 30-3-210(1), MCA; and that Rebecca was the "holder" and thus a "person entitled to enforce" the instrument under § 30-3-301, MCA. The court ordered that "[t]he $80,000 shall remain Rebecca's property."

¶10    Jason later moved for relief from the order, submitting an affidavit stating that Bradley had mailed him the original cashier's check before Bradley's death. The District Court denied relief, declining to consider Jason's "after the fact attempt to supplement the record." The court then entered final judgment incorporating its August 22, 2025 ruling that the $80,000 would remain Rebecca's property. Jason appeals.

**STANDARD OF REVIEW**

¶11    Montana's Uniform Probate Code provides that appeals in probate matters, including the scope of review, are governed by the statutes and rules applicable to appeals to this Court. Section 72-1-209, MCA. We review a district court's conclusions of law for correctness. *In re Estate of Ayers*, 2007 MT 155, ¶ 12, 338 Mont. 12, 161 P.3d 833; *In re Estate of Hunsaker*, 1998 MT 279, ¶ 27, 291 Mont. 412, 968 P.2d 281. Interpretation and application of statutes present questions of law. *In re Estate of Damjanovich*, 2025 MT 259, ¶ 9, 425 Mont. 1, 579 P.3d 166. We review findings of fact for clear error. *Hunsaker*, ¶ 25. A finding is clearly erroneous if it is not supported by substantial credible evidence, if the district court misapprehended the effect of the evidence, or if this Court is left with a definite and firm conviction that a mistake has been made. *Hunsaker*, ¶ 26; *Interstate Prod. Credit Ass'n v. DeSaye*, 250 Mont. 320, 323, 820 P.2d 1285, 1287 (1991).

5

¶12 Rebecca contends the appeal should be reviewed only as a challenge to the denial of M. R. Civ. P. 60(b) relief. We disagree. Jason's notice of appeal identified the final Order and Judgment, and that judgment incorporated the August 22, 2025 classification ruling. An appeal from a judgment draws into question prior orders and rulings that led up to and resulted in the judgment. M. R. App. P. 4(4)(a). Jason's opening brief does not ask this Court to rely on the later affidavit asserting that Bradley mailed the cashier's check to Jason. Instead, Jason challenges the District Court's legal and factual classification of the $80,000 on the record before the court when it made that classification. We therefore review the District Court's legal conclusions for correctness and its supporting factual findings for clear error.

## DISCUSSION

¶13 *Whether the District Court erred in holding that the funds associated with an uncashed $80,000 cashier's check were not an estate asset.*

¶14 The District Court's classification of the $80,000 depended on two related conclusions: first, that Bradley completed a lifetime gift to Rebecca; and second, that Rebecca was a holder or other person entitled to enforce the cashier's check under Montana's Uniform Commercial Code (UCC). Neither conclusion is supported by the governing law or the record.

**A. The record does not establish a completed inter vivos gift.**

¶15 A gift is "a transfer of personal property made voluntarily and without consideration." Section 70-3-101, MCA. The essential elements of an inter vivos gift are donative intent, voluntary delivery, and acceptance by the recipient. *Marans v. Newland*,

6

141 Mont. 32, 39, 374 P.2d 721, 724 (1962); *see also Albinger v. Harris*, 2002 MT 118, ¶ 31, 310 Mont. 27, 48 P.3d 711. "Delivery, which manifests the intent of the giver, must turn over dominion and control of the property to the recipient." *Albinger*, ¶ 31. The proponent of a gift must establish the elements by clear and convincing evidence. *Albinger*, ¶ 31.

¶16 The District Court correctly recognized that Bradley could give his property to whomever he chose during his lifetime. *See Platts*, 134 Mont. at 482, 334 P.2d at 728. But the ability to make a gift does not eliminate the legal requirements for a completed gift. A completed inter vivos gift still requires proof that the donor intended to give the property and voluntarily delivered it to the donee.

¶17 *Platts* does not support the District Court's ruling on this record. *Platts* does not carry the weight the District Court placed on it because it did not involve delivery of a negotiable instrument, UCC Article 3, or the question whether a person who never possessed a cashier's check payable to the decedent became entitled to enforce it. It arose from a post-death dispute between the decedent's second wife and the decedent's son and daughter-in-law over whether the second wife could impose a trust on property—land and cattle—that already stood in the son and daughter-in-law's names. *Platts*, 134 Mont. at 476-79, 334 P.2d at 725-26. The real property was being purchased under a contract for deed on which the son and daughter-in-law were the named purchasers, although the decedent had paid the down payment. *Platts*, 134 Mont. at 478-79, 334 P.2d at 725-26. The cattle likewise were owned in the son and daughter-in-law's names. *Platts*, 134 Mont. at 476, 334 P.2d at 725. Thus, *Platts* addressed whether the decedent's payment and

7

conduct supported a gift or instead gave rise to a resulting or constructive trust in favor of the second wife. *Platts*, 134 Mont. at 485-88, 334 P.2d at 730-31.

¶18 That distinction is dispositive. In *Platts*, the property at issue already had been placed in the defendants' names; the asserted gift therefore did not depend on deeming an undelivered negotiable instrument "constructively delivered" to a person who was not its payee. Here, by contrast, the $80,000 cashier's check was payable to Bradley, not Rebecca. The District Court used *Platts* to infer donative intent and then used that inferred intent to conclude that Bradley had constructively delivered the cashier's check to Rebecca. *Platts* does not permit that step. Establishing that a decedent intended a gift where the property already stood in the alleged donees' names does not establish delivery of a cashier's check payable to the decedent himself. Nor does it make the alleged donee a holder, a nonholder in possession with rights of a holder, or any other person entitled to enforce the instrument under § 30-3-301, MCA.

¶19 The record here also differs materially from *Platts*. Rebecca acknowledged that Bradley did not give her the $80,000. At her deposition, Rebecca testified that she did not know why Bradley withdrew the money, did not know where he put it, and did not know what happened to it.[1] She testified that she found no cash when completing the estate inventory. Those statements are not evidence of a completed gift to Rebecca; they are evidence that Rebecca did not know of, receive, possess, or control the cashier's check during Bradley's life.

---

[1] Although the full deposition transcript does not appear to have been before the District Court, Jason quoted and cited excerpts referenced in this Opinion in support of his district court briefing.

8

¶20    The District Court inferred donative intent from Bradley's earlier $50,000 cashier's check to Jason. But that comparison undermines rather than supports the District Court's inference. The earlier cashier's check was made payable to Jason. The $80,000 cashier's check was made payable to Bradley. The record treated the $50,000 cashier's check as a completed transfer to Jason; the record does not support the same conclusion as to the $80,000 cashier's check and Rebecca. Unlike the $50,000 check, the $80,000 check was not made payable to the alleged donee, and Rebecca's own court filings did not establish that Bradley gave it to her, delivered it to her, or placed it within her dominion and control.[2] If the "same process" had been used to make a completed gift to Rebecca, Bradley would have made the cashier's check payable to Rebecca or otherwise completed delivery in a manner sufficient to divest himself of dominion and control. The difference is material.

¶21    Additionally, the District Court's finding that Bradley was "quite ill" and sought to provide for Rebecca because of his "imminent demise" is not supported by substantial credible evidence. Those statements about Bradley's health came from Rebecca's court filings, but Jason responded that Rebecca's deposition testimony materially contradicted them. The court was entitled to draw reasonable inferences from a limited record, but clear and convincing evidence cannot rest on speculation contrary to the most direct testimony in the record.

¶22    The District Court also found that Bradley "apparently left" the cashier's check in the home where he resided with Rebecca. The record contains no direct evidence that

---

[2] In the October 13, 2022 inventory of assets, Rebecca reported no cash found.

9

Bradley left the original cashier's check in the home for Rebecca. Even assuming the check was in the home at some point, the check was payable to Bradley, and the record does not show that Bradley communicated a gift, indorsed the check, surrendered control over it, or placed it within Rebecca's power. Leaving a check payable to oneself among one's own papers is not delivery to another person. It is not substantial credible evidence of voluntary delivery to Rebecca.

¶23 We do not hold that Rebecca acted in bad faith. The record indicates she sought and received advice from a bank employee and prior counsel. But advice from a bank employee or counsel does not supply proof of Bradley's donative intent or delivery. The question is not Rebecca's subjective belief after Bradley died; it is whether Bradley completed a lifetime gift before he died. On this record, he did not.

**B. Rebecca's status as an authorized signer did not make the funds her individual property.**

¶24 Rebecca's alternative theory is that she was entitled to the $80,000 because she had been an authorized signer on the savings account from which Bradley obtained the cashier's check. The account documents and Montana statutes do not support that conclusion.

¶25 Section 72-6-211(4), MCA, provides that an "agent in an account with an agency designation has no beneficial right to sums on deposit." Section 72-6-205(3), MCA, further provides that the "[d]eath of the sole party or last-surviving party terminates the authority of an agent." Those statutes are consistent with the account terms for the Bradley's Custom Carpet savings account from which Bradley drew the $80,000 for the cashier's check at

10

issue. Those account terms provided that authorized signers may transact on the account but have no ownership or rights at death unless named as pay-on-death beneficiaries. Rebecca was not a pay-on-death beneficiary.

¶26 Thus, even if Rebecca could transact on the account during Bradley's life as an authorized signer, her agency authority did not give her beneficial ownership of the account or the cashier's check. Moreover, that authority did not survive Bradley's death. The bank's later decision to release or reissue funds to Rebecca because she had been an authorized signer did not determine ownership as between Rebecca individually and the estate.

¶27 We need not decide whether the bank discharged any obligation to itself by issuing a replacement cashier's check or releasing funds. The issue before us is classification in probate. For that purpose, Rebecca's status as an authorized signer did not transform Bradley's cashier's check into Rebecca's individual property.

**C. Rebecca was not a holder or other person entitled to enforce the cashier's check individually.**

¶28 The District Court also concluded that Rebecca was a "holder" and a "person entitled to enforce" the cashier's check. That conclusion was legally incorrect.

¶29 A cashier's check is both a check and a negotiable instrument. Section 30-3-104(1), (6)(a)(ii), (7), MCA. A "person entitled to enforce" an instrument includes the holder of the instrument, a nonholder in possession of the instrument who has the rights of a holder, or a person not in possession who is entitled to enforce the instrument under § 30-3-309, MCA. Section 30-3-301, MCA.

11

¶30    Rebecca was not a holder as recognized in § 30-1-201(2)(v)(i), MCA. For an instrument payable to an identified person to be negotiated to another person, there must be transfer of possession and indorsement by the holder. Section 30-3-202(2), MCA. The cashier's check was payable to Bradley. Rebecca therefore could not become a holder unless the instrument was transferred to her and indorsed by Bradley. The record does not show that Bradley indorsed it to Rebecca or that he transferred possession of the instrument to Rebecca. Rebecca's own deposition testimony supports that conclusion: she testified that Bradley did not give her the $80,000 and that she did not know what happened to it.

¶31    Rebecca also was not a nonholder in possession with the rights of a holder. Section 30-3-210(1), MCA, provides that an "instrument is transferred when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument." Delivery means "voluntary transfer of possession." Section 30-1-201(2)(p), MCA. Even when an instrument is transferred for value and "the transferee does not become a holder because of lack of indorsement by the transferor, . . . negotiation of the instrument does not occur until the indorsement is made." Section 30-3-210(3), MCA. For an instrument payable to an identified person to be negotiated to another person, there must be transfer of possession and indorsement by the holder. Section 30-3-202(2), MCA. Section 30-3-210(3), MCA, confirms that when an instrument is transferred for value, but the transferee does not become a holder because of lack of indorsement, negotiation does not occur until the indorsement is made. The record contains no evidence that Bradley voluntarily transferred possession of the cashier's check

to Rebecca for the purpose of giving her the right to enforce it or that Bradley indorsed the check to Rebecca.

¶32 The District Court's "constructive delivery" analysis cannot overcome these statutory requirements. Montana's UCC defines delivery as voluntary transfer of possession. Section 30-1-201(2)(p), MCA. The District Court found constructive delivery from the mere premise that Bradley left the check in the home. But there was no evidence that Rebecca possessed the original instrument, knew of it before Bradley's death, exercised dominion over it, or received it from Bradley. In fact, in her November 8, 2024 deposition, approximately three years after Bradley's death, Rebecca testified that she did not have "any clue" why Bradley withdrew $80,000 from his business account, she "didn't have anything to do with [the] account," she did not "know where he put it," and he did not give her the $80,000. Without delivery of the instrument, there was no transfer under § 30-3-210(1), MCA. Even if there had been a transfer, Rebecca did not assert below or on appeal that the cashier's check had been indorsed to her. Without indorsement, there was no negotiation under § 30-3-202(2), MCA. *See also* § 30-3-210(3), MCA.

¶33 The parties cite no Montana case applying constructive delivery to make a person a holder or nonholder in possession of a negotiable instrument payable to another identified person. Jason cites *City Nat'l Bank of Miami v. Wernick*, 368 So. 2d 934 (Fla. Dist. Ct. App. 1979), for the proposition that constructive delivery of a negotiable instrument, where recognized, requires evidence that the maker intended to make the instrument enforceable and surrendered control over it by intentionally placing it under the power of the payee or a third person for the payee's use. *Wernick*, 368 So. 2d at 937. We need not decide whether

to adopt *Wernick*'s rule in Montana. The District Court's finding fails even under its more permissive premise because the record does not show surrender of control by Bradley, placement under Rebecca's power, or intent to make the instrument enforceable by Rebecca.

¶34 Similarly, § 30-3-309, MCA, does not assist Rebecca. That statute permits enforcement of a lost, destroyed, or stolen instrument only if the person seeking enforcement was entitled to enforce the instrument when loss of possession occurred or acquired ownership from a person who was entitled to enforce it when loss of possession occurred. Section 30-3-309(1), MCA. Rebecca did not establish that she ever possessed the original cashier's check or that she was entitled to enforce it when possession was lost. She therefore did not qualify as a person not in possession entitled to enforce the instrument under § 30-3-309, MCA.

¶35 The District Court thus erred in concluding that Rebecca was a holder or person entitled to enforce the cashier's check. Because the check was payable to Bradley, not indorsed to Rebecca, not delivered to Rebecca, and not otherwise enforceable by Rebecca individually under § 30-3-301, MCA, the cashier's check funds could not be classified as Rebecca's individual property on the basis of the UCC.

**D. Rebecca's procedural arguments do not cure the substantive classification error.**

¶36 Rebecca argues that Jason stipulated to submit the remaining issues without further testimony, later attempted to supplement the record after an adverse ruling, and therefore should be limited to review of the District Court's denial of Rule 60(b) relief. We agree only that the District Court was not required to reopen the record based on Jason's

14

post-order affidavit. Jason sought relief under M. R. Civ. P. 60(b)(1) and (6). Rule 60(b)(1) permits relief for "mistake, inadvertence, surprise, or excusable neglect." Rule 60(b)(6) permits relief for "any other reason that justifies relief," but it is not intended to substitute for appeal. *In re Marriage of Schoenthal*, 2005 MT 24, ¶ 35, 326 Mont. 15, 106 P.3d 1162. Nor did Jason show that the original classification ruling resulted from the type of mistake, inadvertence, surprise, or excusable neglect contemplated by Rule 60(b)(1), rather than from legal and factual error reviewable on appeal from the final judgment.

¶37    Jason's post-order affidavit asserted facts that were not before the District Court when it entered the August 22, 2025 Order Re Remaining Disputed Issues. The parties had stipulated that the court could decide the remaining disputed issues without further testimony. On that procedural record, the District Court could decline to reopen the record under Rule 60(b)(1) or (6). We therefore do not rely on Jason's later affidavit in resolving this appeal.

¶38    That does not end the matter, however, because Jason's appeal is not confined to the denial of Rule 60(b) relief. The final Order and Judgment incorporated the District Court's August 22, 2025 classification ruling that "[t]he $80,000 shall remain Rebecca's property." Jason's notice of appeal identified the final judgment, and an appeal from a judgment draws into question prior orders and rulings that led up to and resulted in that judgment. M. R. App. P. 4(4)(a). The parties themselves framed the remaining issue for the District Court as "[w]hether the disputed $80,000 should be considered an Estate asset or an asset of Rebecca."

15

¶39 Thus, even if the District Court did not abuse its discretion in refusing to consider Jason's later affidavit, Rebecca's procedural argument does not answer whether the August 22, 2025 classification ruling was legally correct and factually supported on the record then before the court. It was not. The existing record did not establish a completed inter vivos gift to Rebecca, did not establish delivery of the cashier's check to Rebecca, did not establish that Rebecca was a holder or nonholder in possession under Montana's UCC, and did not establish that her former status as an authorized signer gave her surviving ownership or enforcement rights after Bradley's death.

¶40 Rebecca also emphasizes that Bradley and Rebecca were married for many years, that Bradley may have wanted to provide for her, and that bank and counsel advice indicated the funds were not estate property. Those facts may explain why Rebecca believed she could deposit the funds into her personal account, but they do not supply the missing legal elements necessary to establish a completed inter vivos gift. Marriage may provide a motive for generosity, but motive is not delivery. A withdrawal before death may explain why the bank-account balance changed, but it does not establish who owned the resulting cashier's check. Bank and attorney advice may explain Rebecca's conduct, but it does not establish Bradley's donative intent, indorsement, negotiation, delivery, or transfer of enforcement rights.

¶41 We therefore hold that the District Court erred as a matter of law in concluding Rebecca was a holder or person entitled to enforce the cashier's check and clearly erred in finding that clear and convincing evidence established a completed inter vivos gift to Rebecca. The $80,000 cashier's check funds are an asset of Bradley's estate.

16

**CONCLUSION**

¶42 We reverse the District Court's final Order and Judgment to the extent it provides that the $80,000 shall remain Rebecca's property. We remand with instructions to include the $80,000 as an estate asset and to revise the distribution of the net residual estate consistent with § 72-2-112(4), MCA, and this Opinion.

¶43 Reversed and remanded.

/S/ KATHERINE M. BIDEGARAY

We Concur:

/S/ CORY J. SWANSON
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ INGRID GUSTAFSON